**B. & V. CONSTRUCTION COMPANY, a Corporation, (Plaintiff) Respondent,**

v.

**SHAW–VAN REALTY COMPANY, a Corporation, (Defendant) Appellant.**

No. 51704.

Supreme Court of Missouri,
Division No. 1.

July 11, 1966.

Robert E. Staed, St. Louis, for respondent.

Lawrence E. Ehrhart, Clayton, for appellant.

HYDE, Judge.

Action for balance due on building contract, dated May 16, 1960, and additions

thereafter made. Judgment was for plaintiff for $6,328.26, which both parties agree was the amount remaining due on the contract, supplemental agreement and added extra work. However, defendant had a counterclaim asking for $45,000.00 which its brief says was reduced to $11,800.00. (Proof of items claimed only amounts to $10,800.00.) A jury was waived and the case was tried by the court, which found against defendant on its counterclaim. After judgment was entered and motion for new trial filed, the court on stipulation of the parties reopened the case "for the limited purpose of introducing evidence concerning $5000 note" of defendant, which it claimed should be returned to it. Thereafter, the court entered a final judgment in which the court found the $5000.00 note "represented another debt outside and apart from the cause of action presented in this case" by plaintiff; and defendant has appealed.

■ Plaintiff raises the issue of our jurisdiction. However, the total amount of defendant's proof on its counterclaim was $10,800.00 and the value of the relief it sought of cancellation of its note certainly was $5000.00 not considering accrued interest. Thus the total claims of defendant amounted to more than our jurisdictional amount. Sec. 3, Art. V, Const., V.A.M.S.; Sec. 477.040, RSMo, V.A.M.S.

■ No issue is raised as to plaintiff's judgment for $6328.26 being the correct balance due on the contract, supplemental contract and extra items for the construction of a bowling alley building by plaintiff for defendant. Defendant contends that the judgment against it on its counterclaim is erroneous. Defendant's proof on this counterclaim concerned three items, (1) failure to properly perform certain construction work, on walls at the roof, including defective work and materials claimed not to have been furnished, which would cost $1800.00; (2) failure to install Armco guard rail on its parking lot, which would cost $1000.00; (3) and failure to install drain footing tile around the building which would cost $8000.00.

Defendant says there was insufficient evidence to support the trial court's findings against it on these claims in its counterclaim, a contention obviously without merit since defendant had the burden of proof on these issues. Defendant's further contention as to the first and third of these claims is that the court's findings against these claims are clearly erroneous and contrary to the evidence. As to the second claim, defendant says an agreement signed by its vice president, Robert J. Schoen, was invalid. Considering this second claim first, it appears that Schoen was out there all the time while the work on the building was going on and that defendant's president, George Blankmann, would come out periodically during the day, almost every day. Blankmann said Schoen "acted on behalf of Shaw-Van in supervision and construction of this building;" and "was representing Shaw-Van Realty Company when he was there." The agreement was signed August 25, 1960, and stated: "It is understood that to compensate B. & V. Construction Co., Inc., for the extra work involved in installing the manhole and the extra drain tile the guard rail will be omitted." Another document in evidence signed in May 1960 by Schoen for defendant was a "complete resume of various changes made to the plans and specifications" which authorized six deletions and it is not claimed he did not have authority to sign that agreement. On this and other evidence hereinafter set out, we consider this claim to be without merit.

As to the first claim, defendant's evidence was that the plans called for ¼-inch as-

bestos board but that ⅛-inch board was used. Plaintiff produced invoices for ¼-inch board and put in evidence a sample of the ¼-inch board used. Defendant's evidence also was that roofing cement and insulation were never applied; that required steel studs were not used; and that the asbestos sheathings and the joining walls were not sealed. Defendant's evidence was that because of these failures driving rain would penetrate the side walls on the north side and would get onto the bowling lanes. Plaintiff's evidence was that defendant's officers Blankmann and Schoen were present during construction and approved the manner in which this part of the construction was done.

As to the third claim, defendant's evidence was that only about 20% of the required drain tile was placed around the footings of the building, an estimate based partly on holes defendant had dug along the walls the day before the trial and partly on defendant's computation from an invoice of drain tile purchased by plaintiff. Defendant also complained the downspouts were not connected to the drain tile as required in the specifications. Plaintiff's evidence was that the plans showed no particular place for the drain tile to be installed but that they were installed on three sides of the building. Tile was not installed on the front because the front of the building was on a solid rock ledge. Plaintiff's evidence also was that "it doesn't show on the plans that they (downspouts) were to be hooked to the drain tile." Plaintiff's foreman testified the water from the downspouts went into a concrete splash box and on to the asphalt paving around the building. He said: "The asphalt was graded away from the building so the water would run away." He also stated: "With a roof as big as that is and as much area when water comes off there if you would hook your downspouts directly into those drain tile you would not

only defeat your purpose, you would wash them out because of the volume of water that went through there that would put the water in there and you'd wash your gravel out and—under your footings. You're putting water in instead of taking it out."

As to all three claims, it was shown that there was a guarantee in the specifications "that they were to take care of any defective work within a year;" but that during that period defendant never did call any of these claims to the attention of plaintiff. It further appears that although the building was completed in December 1960, defendant did not make any of these claims to plaintiff until it filed its counterclaim in 1964. Moreover, defendant's officers Blankmann and Schoen were there constantly observing the work while it was being done. Upon consideration of these facts and all the evidence in the case, we cannot hold the court's findings against defendant's claims clearly erroneous and contrary to the evidence. Although the evidence was conflicting, as to some matters, the court's findings on these claims seem to us to be reasonable and fully warranted on the whole record.

■ As to defendant's claim that its $5000.00 note should be cancelled, this issue was brought into the case when it was reopened on defendant's motion. (Apparently plaintiff got the note after the original judgment was entered.) The origin of this note as appears from the testimony of plaintiff's president: "Shaw-Van Realty Company advised me that they didn't have enough money to complete the project and asked me if I could raise $20,000 for them. I did in the process get $5,000 from Mack Electric Company for which they signed a note." It also appears that the note was not a part of plaintiff's claim on the building contracts and that this note was on de-

**4**

posit with Security Title Company, so was not in plaintiff's possession when this suit was brought. Plaintiff was not seeking to enforce the $5000.00 note in this action and defendant asked no relief as to it in any pleading until after the original judgment was entered. The basis of plaintiff's claim and its judgment was as follows:

| | | |
|---|---|---|
| Original contract | $153,959.00 | |
| Supplemental Agreement | 3,152.00 | |
| Extras less $1000 Credit | 3,751.50 | |
| Payments | | $154,534.24 |
| Balance due—Amount of Judgment | | 6,328.26 |
| | $160,862.50 | $160,862.50 |

The calculation of the amount due on extras appears from an agreement of March 29, 1961, in evidence, which was signed by defendant's president and was as follows:

"With reference to our discussion of March 28, 1961 following is the settlement agreed to:

| | | |
|---|---|---|
| Balance of extras due | | 6,174.94 |
| Less payment Rockhill Lumber Co. | 172.08 | |
| Herford Concrete Products Co. | 301.31 | |
| B. & V. Construction Co. | 600.05 | |
| B. & V. Construction Co. | 350.00 | 1,423.44 |
| Balance due after payments | | 4,751.50 |
| Original note (which will be returned) | | 5,000.00 |
| Interest on note 7/1/60 to 3/15/*60* (61) | | 248.50 |
| | | 10,000.00 |
| Less check 3/29/61 | | 1,000.00 |
| Balance due | | $ 9,000.00 |

Of the above balance due a note for $9,000.00 will be executed. This note to run for two years with a payment every six months. This note to be dated March 31, 1961 with equal payments of principal plus interest on the unpaid balance to be made. Note # 1 due 9/30/61; Note # 2 due 3/31/62; Note # 3 due 9/30/62; Note # 4 due 3/31/63."

———◆———

No new note for $9,000.00 was given and therefore the balance due of $3751.50 for extra's was included in the claim sued on. Plaintiff did not have the $5000.00 note and it was not included. Defendant says: "[T]here was no evidence to support the trial Court's finding that the Five Thousand ($5,000.00) Dollar note represented another debt (of Defendant's) outside and apart from the cause of action presented in this case." Our view is that this finding is supported by this agreement of March 29, 1961, which clearly indicates that both parties then considered the $5000.00 note an-

other debt separate and apart from the building agreements. Defendant produced no evidence to the contrary and trial court based its findings on the March 29, 1961 agreement recognizing the $5000.00 note as an obligation in addition to defendant's obligation for the amount due for building extra's. Defendant relies on some apparently conflicting statements by plaintiff's president in his testimony but construed together they reasonably could be considered to mean only that the $5000.00 note was no part of plaintiff's claim against defendant in this action.

The judgment is affirmed.

All concur.