**TEXANS TO SAVE THE CAPITOL, INC., et al., Appellants,**

v.

**BOARD OF ADJUSTMENT OF the CITY OF AUSTIN, Texas, Appellee.**

**No. 13845.**

Court of Appeals of Texas, Austin.

March 3, 1983.

Rehearing Denied March 30, 1983.

---

James E. Cousar, Austin, for appellants.

Albert DeLaRosa, City Atty., Terrence Lang Irion, Asst. City Atty., Austin, for Bd. of Adjustment of City of Austin, Tex.

Charlie D. Dye, Michael J. Crowley, Brown, Maroney, Rose, Baker & Barber, Austin, for Rust Properties.

Before PHILLIPS, C.J., and EARL W. SMITH and BRADY, JJ.

PHILLIPS, Chief Justice.

Appellants [1] appeal from the trial court's judgment which had affirmed a decision of appellee Board of Adjustment of the City of Austin,[2] which decision, in turn, had af-

---

1. Appellant Texans to Save the Capitol, Inc., is a not-for-profit Texas corporation, which is primarily concerned with protecting the views of the State Capitol building in downtown Austin. Appellant Larry Deuser appeals this cause as an individual, who has office space near the proposed building. He is a member of the Austin City Council. Appellant Emma Lou Linn appeals this cause as an individual. She owns property within three blocks of the proposed building. She resides therein and rents other portions of her property.

2. Appellee Board of Adjustment of the City of Austin is an administrative agency of the City created pursuant to Tex.Rev.Civ.Stat.Ann. art. 1011g (Supp.1982–83) and Section 13–2–41 of the Code of the City of Austin. Among its

firmed the issuance of a building permit to appellee Rust Properties[3] by the Austin Building Department.

We affirm the judgment of the court below and sustain the issuance of the building permit.

Appellee Rust Properties' building permit, the focal point of this appeal, grants appellee the right to construct a 398 feet tall building at 6th and Congress in downtown Austin. Appellants challenge the interpretation of the local zoning ordinance which allows the structure to rise above the 200 feet height limitation imposed on downtown Austin. Appellants have challenged the permit's issuance pursuant to Tex.Rev. Civ.Stat.Ann. art. 1011g (Supp. 1982–83).

## I.

■ At the outset, appellants' standing having been challenged before the Board, we must determine if appellants have shown that they have standing to challenge the permit's issuance. As this Court recently held in *Austin Neighborhoods Council, Inc. v. Board of Adjustment*, 644 S.W.2d 560 (Tex.App.—Austin, 1982, an individual must present some evidence to the Board of Adjustment to "show how he has been injured or damaged other than as a member of the general public" in order for him to rightfully appeal an administrative officer's decision to the Board of Adjustment under the requirements of art. 1011g(d). *See Scott v. Board of Adjustment*, 405 S.W.2d 55, 56 (Tex.1966). In imposing the terms of art. 1011g in *Austin Neighborhoods*, this Court did not attempt to deny any person access to the Board of Adjustment, but instead followed the plain language of that statute, and the various reported decisions furthering the legislature's intent, to guarantee the orderly exercise of the right of access.

■ Unlike *Austin Neighborhoods*, in this appeal appellants presented uncontested evidence to the Board of their aggrievement and the Board of Adjustment expressly and favorably ruled thereon. Although the evidence offered shows some unique harm done to appellants, it at best is very weak; however, in an overabundance of caution we shall proceed to reach the merits of the case and decide this issue.

## II.

■ The sole issue of this appeal concerns the interpretation of a local zoning ordinance, upon which interpretation the building permit was granted. The local ordinance, Section 13–2–130(a)(1) of the City Code states:

HEIGHT. No building shall exceed a height of two hundred feet on the streetline, provided, that the height of the building may be increased above two hundred feet by increasing the height three feet for each foot *setback* from the streetline. (emphasis added)

Section 13–2–1 defines "setback" as:

The minimum horizontal distance between the front wall of any projection of the building, excluding steps and unenclosed porch, and the street line.

Clearly the ordinance allows a building to exceed the 200 feet height limitation by three feet for every one foot it is setback from the streetline. The problem arises in enforcing the ordinance because of the enigmatic definition of "setback." After reading the ordinance and reviewing the capable written and oral arguments of the various parties to this suit, as presented in the record of the proceedings below, and presented herein, it is apparent that the ordinance is ambiguous.[4]

---

various duties, the Board hears and decides appeals from the determinations of city building department officials in their enforcement of local zoning ordinances.

**3.** Appellee Rust Properties, a partnership which owns and develops property in downtown Austin, is the recipient of the building permit challenged in this cause.

**4.** "When a court declares a statute ambiguous, it asserts that some of the words used may refer to several objects and the manner of their use does not disclose the particular object to which the words refer. A word is a symbol which directs the reader to a referent, but in this case the reference is not sufficiently accurate to make the referent determinate for the

Initially, we are mindful that if "the meaning of the provision be doubtful or ambiguous, the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight. *Slocomb v. Cameron Independent School District,* 116 Tex. 288, 288 S.W. 1064 (Tex. 1926); *State v. Aransas Dock and Channel Co.,* 365 S.W.2d 220 (Tex.Civ.App.1963, writ ref'd)." *Calvert v. Kadane,* 427 S.W.2d 605, 608 (Tex.1968).[5]

This challenged interpretation, promulgated by the building department and expressly approved by the Board of Adjustment, allows a building to exceed 200 feet anytime any part of the structure's front wall or front surface below the 200 feet mark is setback or indented from the streetline. Although not defined in the ordinance, streetline is interpreted to be an imaginary plane which runs horizontally along the curb line, parallel to the building, and which rises vertically upward from the curb in a straight line to the sky. This interpretation allows a "wedding cake" or "pyramid-like" structure to rise above the 200 feet limitation of Section 13–2–130(a)(1) by employing the section's three-for-one bonus exception.

Appellants' primary contention is that the ordinance contemplates only one setback per building. They contend that the distance of the setback is to be measured from the wall closest to the streetline and that this distance multiplied by three gives the footage by which a building may exceed the 200 feet limitation. In most buildings this distance will be measured from the ground-floor to the streetline.

We disagree with appellants' argument that this is the only possible meaning derived from the ordinance, which they claim is clear and unambiguous on its face. In reading the ordinance, we find no such limitation and in fact are persuaded by the ordinance's use of the term "any projection" that more than one setback is envisioned. The record made at the hearing before the Board of Adjustment also shows that the Director of the Building Department stated that the term "minimum," as employed in the definition of "setback"—the minimum horizontal distance—is used not as a limitation on the number of setbacks allowed, but is used throughout the zoning ordinances as a limitation on how close a structure can be built to the streetline.

We are also mindful that this interpretation is not something recently created by either the Building Department or the Board of Adjustment. It has been used for more than twenty years in the actual construction of buildings throughout the City of Austin.[6] We are also aware that the interpretation furthers the legislative intent and purposes embodied in the city zon-

litigation before the court." Sutherland, Statutory Construction, 4 ed., § 45.02 (1973).

The Texas courts have universally adopted the "clear and unambiguous meaning" test in judging a statute's ambiguity. This allows the court the authority to interpret the ordinance *only* if the language's meaning is not clear and plain on the law's face. If the language is clear and plain, the court is bound by the statutory language's "plain meaning." *Ex parte Roloff,* 510 S.W.2d 913 (Tex.1974); *Fox v. Burgess,* 157 Tex. 292, 302 S.W.2d 405 (Tex.1957); *Dodson v. Bunton,* 81 Tex. 655, 17 S.W. 507 (Tex. 1891).

5. *See Citizens National Bank of Paris, Illinois v. Calvert,* 527 S.W.2d 175, 180 (Tex.1975); *Ex parte Roloff,* 510 S.W.2d 913, 915 (Tex.1974); *Texas Health Fac. Com'n v. El Paso Med., etc.,* 573 S.W.2d 291, 295 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Lloyd A. Fry Roofing Co. v. State,* 541 S.W.2d 639, 644 (Tex.Civ.App.1976, writ ref'd n.r.e.); *Rogers v. Burton,* 496 S.W.2d 673,

676 (Tex.Civ.App.1973, writ ref'd n.r.e.), *cert. denied,* 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); *Heard v. City of Dallas,* 456 S.W.2d 440, 444 (Tex.Civ.App.1970, writ ref'd n.r.e.); *Redd v. Texas Empl. Com'n,* 431 S.W.2d 16, 25 (Tex.Civ.App.1968, writ ref'd n.r.e.); *Walker v. Mann,* 143 S.W.2d 152, 156 (Tex.Civ.App.1940, writ ref'd).

6. There was evidence presented that the interpretation was first formulated shortly after the ordinance's adoption in 1931, more than fifty years ago. In 1963, the Westgate Building was built on the block directly west of the Capitol and employed this interpretation to exceed the 200 feet height limitation to rise to 239 feet. Another landmark on the Austin skyline, Dobie Mall, constructed on the University of Texas campus in downtown Austin in 1968, rises 299 feet and was also built under the provisions of the interpretation now challenged.

ing ordinances. Section 13–2–2 of the Code expressly sets forth the intent and purpose of the ordinances. It states:

> The zoning regulations ... have been made ... for the purpose of promoting the health, safety, morals, and general welfare of the community of the city. They have been designed ... to *provide adequate light and air* .... [Emphasis added]

The record shows that the interpretation encourages dissimilar and unique architecture in downtown Austin and dissuades builders from constructing box-like structures which create a "canyon" effect on the street below. The resulting buildings, set back at various heights from the streetline, "provide adequate light and air" and further the general purpose of the ordinances.

The city council of Austin has met hundreds of times since the interpretation was first advanced. It is uncontested that the council is and has been fully aware of the interpretation. It has amended the zoning ordinance innumerable times. At no time has the city council, the body charged with drafting the local zoning ordinances, voiced dissent over the use of the interpretation.[7] In fact, after a public hearing at which time the structure was fully described and its impact fully explained, the city council unanimously passed on the building's receipt of a license to construct the building over an alleyway.[8] We must be ever mindful that we do not sit as a super-legislative body writing the law as we would have it. We sit in this appeal as judges of the legality of the agency's interpretation of a local ordinance.

■ We have reviewed the Board's interpretation and have construed the ordinance and agree that the Board's interpretation of the ordinance is correct.

## III.

We now must judge if the interpretation, which we have held to be legally correct, has been properly employed in this cause. In essence, we must determine if the building permit was rightfully issued.

■ Although this is an appellate review of an agency's action, we do not employ the substantial evidence standard of review in reviewing the issuance of the building permit by the Board of Adjustment. *Nu-Way Emulsions, Inc. v. City of Dalworthington Gardens,* 617 S.W.2d 188, 189 (Tex.1981). We are limited merely to determine the legality of the Board's order granting the permit. *Swain v. Board of Adjustment of the City of University Park,* 433 S.W.2d 727 (Tex.Civ.App.1968, writ ref'd n.r.e.), *cert. denied,* 397 U.S. 977, 90 S.Ct. 1085, 25 L.Ed.2d 274 (1970).

■ Although art. 1011g(m) provides "the [trial] court may reverse or affirm wholly or partly, or may modify the decision brought up for review," we have no power or authority to replace the agency's discretion with our own in deciding the issues presented. *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 190 S.W.2d 67, 70 (Tex.1954). To find the Board's order, granting the issuance of the building permit, illegal, which order is presumed to be valid, the appellant must make a clear showing to this Court, in view of the entire record, that the Board of Adjustment abused its discretion in issuing the building permit. If the evidence before this Court, as a whole, is such that reasonable minds could have reached the same conclusion as made by the Board of Adjustment, we must

---

7. This Court has previously held that such knowing inaction is actually tacit approval of the interpretation. *Armco Steel Corp. v. Texas Empl. Com'n,* 386 S.W.2d 894, 896 (Tex.Civ. App.1965, writ ref'd n.r.e.).

8. From reading the record it appears that this building has had eight public hearings at which time full discussion was had on the structural dimensions and aesthetic impact of the structure. Such hearings have been held before the

Historical Landmark Commission, the Planning Commission, and the City Council. All of these bodies favorably passed on the structure's erection. It should be noted that Rust Properties, although not required, voluntarily appeared before the Planning Commission at a Capitol View Corridor hearing. The Commission found that the building would not block any of the established view corridors in Austin.

sustain the issuance of the building permit. *Swain v. Board of Adjustment of the City of Dalworthington Park, supra,* 433 S.W.2d at 730.[9]

 In reviewing the record of the proceedings below, we see that the Board of Adjustment was fully informed of the interpretation and was also fully apprised of the structural dimensions of the proposed building. The record clearly shows that the building is designed in such a manner as to be setback a total of sixty-six feet. According to the provisions of the ordinance, this distance must be multiplied by three to determine the height bonus awarded by the setback. This distance of the setback multiplied by three is 198 feet. In adding on the three-for-one bonus provision of 198 feet to the 200 feet height limitation, we obtain the figure of 398 feet. This is the exact height of the proposed building. Therefore, we find no abuse of discretion in the action of the Board of Adjustment in issuing appellee Rust Properties the building permit in question. The order is certainly one reasonable minds could agree upon.

The judgment below is affirmed.

---

**9.** *See Currey v. Kimple,* 577 S.W.2d 508 (Tex. Civ.App.1978, writ ref'd n.r.e.); *Board of Adjustment of the City of San Antonio v. Willie,* 511 S.W.2d 591 (Tex.Civ.App.1974, writ ref'd n.r.e.); *Zoning Board of Adjustment of the City of San Antonio v. Marshall,* 387 S.W.2d 714 (Tex.Civ.App.1965, writ ref'd n.r.e.).