GALVESTON HISTORICAL
FOUNDATION,
Appellant,

v.

ZONING BOARD OF ADJUSTMENT
OF THE CITY OF GALVESTON,
TEXAS, and Broadway SE, LP, Appel-
lees.

No. 01–99–01200–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

May 4, 2000.

Kenneth J. Bower, Galveston, for appellant.

Robert J. Gervais, Stephen W. Baker, Galveston, Kevin D. Jewell, Houston, for appellee.

Panel consists of Justices, O'CONNOR, NUCHIA, and DUGGAN.*

## OPINION

SAM NUCHIA, Justice.

This is an appeal of a final order upholding the decision of the Board of Adjustment that Galveston Historical Foundation did not have standing to appeal. We reverse, render, and remand for further proceedings.

## BACKGROUND

The City of Galveston has established, by ordinance, a special zone on Broadway from 19th Street to 59th Street extending from the alley on the south side of Broadway to the alley on the north side. This zone is known as the "Broadway Overlay Zone," and various building restrictions, including size and types of signs, apply within this zone.

Broadway SE, LP, a limited partnership applied for and was granted a permit by the planning department of the City of Galveston to erect two freestanding monument signs at the site of a newly constructed Eckerd drug store at the southeast corner of 25th and Broadway in Galveston. The signs were to be built of brick and were to be nine feet high and thirteen feet wide, with an Eckerd logo on the upper portion to be twelve feet wide and four feet high. One sign was to be located on Broadway, and the other on 25th Street.

Galveston Historical Foundation, a non-profit organization, leases Ashton Villa, an historical mansion on the northeast corner of Broadway and 24th Street, and conducts a variety of fundraising activities there. GHF appealed the decision of the planning department to the Zoning Board of Adjustment, an administrative agency created under section 211.008 of the Texas Local Government Code.[1] GHF contended that each of the signs far exceeded the maximum "sign face" size of 48 square feet allowed in the Overlay Zone.[2] Broadway SE challenged GHF's standing to appeal to the Zoning Board of Adjustment, and the Board held a hearing on the issue of standing. After hearing testimony from GHF and Broadway SE and statements by a city attorney, one member of the Board moved that GHF had standing. The motion was not seconded, and it failed for lack of a second. This had the same effect as a ruling that GHF did not have standing to appeal to the Board.[3]

GHF filed a petition for a writ of certiorari with the district court. The district court, after reviewing the pleadings and briefs of GHF and the Board and the transcript of the hearing, found that the Board did not abuse its discretion in concluding that GHF lacked standing and or-

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Tex. Local Gov't Code Ann. § 211.008(f) (Vernon 1999).

2. The Zoning Board and Broadway SE contend that the sign is in compliance with the zoning restrictions because the "sign face" is not the entire brick monument, but is the four feet by twelve feet logo placed on the monument. However, the interpretation of the or-

dinance governing the size of signs is not an issue in this appeal.

3. The Board evidently relied on Roberts Rules of Order as a procedural mechanism for avoiding a vote on the issue of standing. By not bringing the issue to a vote, the Board also avoided the statutory requirement of recording the vote of each member on the issue. See Tex. Local Gov't Code Ann. § 211.008(f) (Vernon 1999).

dered that GHF take nothing, upheld the action of the Board, and denied the requested temporary and permanent injunctions.

## DISCUSSION

### *Standard of Review*

■ A decision of a zoning board of adjustment on the merits of an issue is reviewed for abuse of discretion, *City of San Angelo v. Boehme Bakery,* 144 Tex. 281, 286, 190 S.W.2d 67, 70 (1945); *see also Board of Adjustment of City of Corpus Christi v. Flores,* 860 S.W.2d 622, 626 (Tex.App.—Corpus Christi 1993, writ denied). However, standing is a component of subject matter jurisdiction, and appellate courts review the issue of standing as they review subject matter jurisdiction generally. *Texas Ass'n of Bus. v. Texas Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). Because a board of adjustment is a quasi-judicial body, we use the standard of review by which we review the issue of standing in a trial court. *See Flores,* 860 S.W.2d at 626. Under this standard, the party bringing an appeal to the board is required to allege facts that affirmatively show it is an aggrieved person. See *Texas Ass'n of Bus.,* 852 S.W.2d at 446. In our review of the board's determination that GHF, as petitioner, did not have standing, we construe the allegations in favor of the petitioner.

### *GHF's Standing*

The first issue raised by GHF is whether the Board abused its discretion when it did not rule that GHF was "aggrieved." We construe this issue to be a challenge to the Board's failure to rule that GHF had standing to bring its appeal to the Board.

Regarding an appeal to the board of adjustment, the Local Government Code provides:

Except as provided by Subsection (e), any of the following persons may appeal to the board of adjustment a decision made by an administrative official:

(1) a person aggrieved by the decision; or

(2) any officer, department, board, or bureau of the municipality affected by the decision.

TEX. LOCAL GOV'T CODE ANN. § 211.010(a) (Vernon 1999). Thus, GHF could only appeal the issuance of the sign permits if it could establish that it was a "person aggrieved by the decision." The Local Government Code does not define "person aggrieved."

The only issue considered by the Board at the hearing was the issue of standing. The attorney for the City of Galveston advised the Board that they should consider the issue of standing first, and if they reached a decision adverse to GHF on that issue, they would not need to address the merits. He also made a closing argument that if Ashton Villa were adjacent to the drug store, it would have standing, but that because of its distance from the store, the fact that it is on the opposite side of Broadway, and the speculative nature of the harm that might occur, GHF had not established its standing to appeal to the board.

We find only two Texas cases in which standing before a zoning board of adjustment was an issue. In *Austin Neighborhoods Council, Inc. v. Board of Adjustment of City of Austin,* the appealing party did not establish standing because it made no attempt whatever to show how it was injured or damaged other than as a member of the general public. 644 S.W.2d 560, 563 (Tex.App.—Austin 1982, writ ref'd, n.r.e.). In *Texans to Save the Capitol, Inc. v. Board of Adjustment of City of Austin,* standing was challenged, and the appellants presented uncontested evidence to the Board of their aggrievement. 647 S.W.2d 773, 775 (Tex.App.—Austin 1983, writ ref'd n.r.e.). The court of appeals noted that the evidence showed some unique harm to appellants, but it "at best is very weak." *Id.* The court

does not set out the evidence that was presented.

In *Scott v. Board of Adjustment,* a case involving standing to appeal a board's decision to a district court, the supreme court stated, "Where the statute requires that the person be interested, affected, or aggrieved ... the plaintiff must allege and show how he has been injured or damaged other than as a member of the general public...." 405 S.W.2d 55, 56 (Tex.1966). However, the damage or injury need not reach the level of a legal injury. *See Austin Neighborhoods Council,* 644 S.W.2d at 563.

In another context, the supreme court stated, "The terms 'aggrieved' and 'affected' are synonymous and both relate to the requirement that a person show a 'justiciable interest.'" *Hooks v. Texas Dept. of Water Resources,* 611 S.W.2d 417, 419 (Tex.1981). The issue in *Hooks* was whether the Hookses had standing to bring appeal to the district court from an order of the Department of Water Resources. The court held that the Hookses had standing to appeal the Department's order and noted that the hearing examiner designated the Hookses as parties "who may be affected by the action that may be taken as a result of the hearing." *Id.*

In *Hunt v. Bass,* a case involving standing to assert a claim in a district court, 11 plaintiffs in separate suits in Harris County filed a petition for writ of mandamus alleging that the delay in bringing their suits to trial denied them valuable property rights. 664 S.W.2d 323, 324 (Tex.1984). The district court dismissed their petition on the basis that they had no standing. The supreme court said, "[O]nce the plaintiffs alleged an interest peculiar to themselves and distinguishable from the public generally, they were entitled to a factual hearing." *Id.*

Courts in at least two other jurisdictions have determined that persons residing or owning property within a zoned area have standing to challenge zoning decisions affecting that area. In *Byers v. Board of*

*Clallam County Commissioners,* residents and taxpayers challenged an interim zoning ordinance that was passed for a portion of the county. 84 Wash.2d 796, 529 P.2d 823, 826 (1974). The Board of Commissioners argued that the residents and taxpayers did not have standing to attack the ordinance. The supreme court, recognizing its previous holding that residents of an area encompassed by a zoning plan have a sufficient protected interest to have standing to challenge the reasonableness and validity of a zoning ordinance, affirmed the trial court's determination that the residents and taxpayers had standing. *Id.*

In *Davis v. Richardson,* Davis's application for a permit to locate a private social club in a residential zone was granted. 507 S.W.2d 446, 447 (Ky.1974). Several residents, including one owning property adjacent to the proposed club, appealed. *Id.* Davis contended the residents did not have standing as persons who were injured or aggrieved by the decision to grant the permit. *Id.* at 448. The court explained that the restrictions imposed by "the statutory scheme of the concept of an area called a zone" required the conclusion "that property owners within the affected zone to whom the same regulations are applicable are sufficiently interested in preserving the character and integrity of the zone" to have standing. *Id.* The court held that the property owners residing within the affected zone were within the definition of "injured or aggrieved parties." *Id.* at 448–49.

In *21st Century Development Co., LLC v. Watts,* a neighbor objected to a requested amendment to the zoning ordinance that would allow increased residential density in a portion of the zone. 958 S.W.2d 25 (Ky.Ct.App.1997). In determining that Watts had standing to challenge the zone change, the court stated, "Kentucky courts [have recognized] that zoning issues affected more than just the adjacent property owner or those in the same neighborhood."

*Id.* at 28. The court quotes the Kentucky high court, "[T]he purpose of zoning is not to protect the value of the property of particular individuals but rather to promote the welfare of the community as a whole." *Id.*

We agree with the reasoning of the Washington and Kentucky courts. The Broadway Overlay Zone is a narrow strip on both sides of Broadway from 19th Street to 59th Street. The ordinance creating the overlay zone provides, under "Purpose, intent and location of Zone,"

> The area located within the Zone is considered vital to the future economic growth of the City of Galveston and to improve the quality of life for all residents. . . .

The ordinance further provides, under "Definition,"

> A set of zoning requirements that as described in the preceding sections, mapped and imposed in addition to those of the underlying district. Development within the overlay zone must conform to the requirements of both zones. In instances of discrepancy the more restrictive shall apply.

The ordinance provides for numerous conditions and restrictions for buildings within the zone, including front, side, and rear yard setbacks, building materials, landscaping, street lighting, building height, signage, driveways, fencing, and amenities, such as pay phones and vending machines. These restrictions apply to all structures built or rebuilt after the effective date of the ordinance.

We find that persons who reside or operate a business in the restricted zone are persons who have "an interest peculiar to themselves and distinguishable from the public generally." *See Hunt,* 664 S.W.2d at 324. They "are sufficiently interested in preserving the character and integrity of the zone" to have standing to appeal administrative decisions to the board of adjustment because they are within the definition of "injured or aggrieved parties." We conclude that GHF's allegations that it operated a business within the overlay zone and that the approved signs were not in conformance with the restrictions imposed on the zone were sufficient to establish that it was an aggrieved party who had standing to appeal to the board of adjustment.

GHF introduced evidence that supported its allegations of standing. GHF presented the following uncontested facts to establish standing to appeal to the board. GHF had a 40–year lease on Ashton Villa, an historical mansion, from the City of Galveston. Ashton Villa is located across Broadway and one block east of the Eckerd drug store. Both Ashton Villa and Eckerd are within the Broadway Overlay Zone. GHF raises a substantial amount of its $2.5 million dollar operating budget from activities at Ashton Villa, including being open for business 362 days of the year, selling tickets to and conducting tours of Ashton Villa and other historical mansions in the vicinity, operating a gift shop on the premises, and renting a ballroom at the rear of the property for weddings, receptions, and parties. Betty Massey, the executive director of GHF, testified that these activities are directly connected to the unique historical setting of that area of Broadway. In addition, GHF has purchased a second building, the John Sealy Garage, which is around the corner from Ashton Villa and just outside the Overlay Zone, to be used to recycle architectural pieces of old buildings for resale. Massey testified that this business, also, relies on the historical nature of the immediate area. Her concern was that permitting the Eckerd signs would make the area less attractive to their patrons, visitors, guests, and shoppers as well as the groups that rent the ballroom for special occasions.

In the hearing before the Board, Broadway SE argued that GHF was required to show some direct link between the proposed sign and the activities at Ashton Villa, and that GHF should show how oth-

er signs affect Ashton Villa either positively or negatively. However, Broadway SE admitted, when questioned by a board member, that it knew of no similar signs in the area.

The city attorney told the Board that GHF had to demonstrate how it was injured or damaged other than as a member of the general public and that there was some unique or particular effect on them not suffered by the general public. He argued that the statements made by those representing GHF were conclusory or speculative.

Broadway SE and the city attorney attempted to place a higher standard of proof on GHF than was required to establish standing. GHF was not required to establish a direct link between the Eckerd sign and the activities at Ashton Villa, nor did it have to show that legal harm had already occurred. GHF established that its business would be affected other than as a member of the general public if nonconforming signs were permitted, and it had an interest peculiar to itself in preserving the historical nature of the neighborhood.

Even if a higher standard of proof were imposed, GHF's allegations, when construed in its favor, were sufficient to establish standing. Accordingly, we sustain GHF's first issue.

In light of our determination on GHF's first issue, we need not reach its second issue.

We reverse the judgment of the trial court, render judgment that the Zoning Board of Adjustment abused its discretion in concluding that GHF lacked standing to pursue the merits of its appeal before the Zoning Board of Adjustment of the City of Galveston, and remand the cause to the Board of Adjustment for further proceedings.