# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00561-CV

**City of Austin, Appellant**

**v.**

**Hyde Park Baptist Church, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT NO. GN202015, HONORABLE PETER M. LOWRY, JUDGE PRESIDING

## O P I N I O N

Appellee Hyde Park Baptist Church sued appellant the City of Austin over the City's decision to suspend a site-development permit that would have allowed the Church to construct a parking garage on Church property. The permit was suspended by the Austin City Council after the Church's neighbors complained that the parking garage would not comply with an area-specific ordinance enacted in 1990 to govern development of the Church's property. The district court granted summary judgment in favor of the Church, finding that the City Council had no authority to hear the appeal and that the permit complied with the applicable ordinance, and the City appealed. We affirm the district court's judgment.

## Factual and Procedural Background

The Church owns several tracts of property in the area of central Austin known as Hyde Park. The property is zoned SF-3.[1] Generally, construction on property zoned SF-3 is subject to a 45% impervious-cover limitation under the City's Land Development Code (LDC).[2] The LDC's limitations are, however, subject to modification.[3]

The tract in question is bounded north and south by 40th and 39th Streets, east and west by Speedway and Avenue D. The Church's efforts to expand its facilities have been a source of contention with its neighbors for many years. In 1990, in an effort to resolve the long-standing disagreement, the City arranged meetings between members of the Hyde Park Neighborhood

---

[1] Property zoned SF-3 can be used for single-family residences or duplexes. Austin, Tex., Land Dev. Code § 25-2-57 (2004).

[2] The parties discuss both impervious- and building-cover limitations. "Impervious cover" is the "total horizontal area of covered spaces, paved areas, walkways, and driveways." *Id*. § 25-1-23 (2004). "Building cover" is part of impervious cover and is defined as "the area of a lot covered by buildings or roofed areas, but excludes ground level paving, landscaping, open recreational facilities, incidental projecting eaves, balconies, and similar features." *Id.* § 25-1-21(10) (2004). We will use "impervious cover" to include building cover. The standards for property zoned SF-3 are:

| | |
|---|---|
| Maximum Height: | 35 feet |
| Minimum Setbacks: | |
|     Front Yard: | 25 feet |
|     Street Side Yard: | 15 feet |
|     Interior Side Yard: | 5 feet |
|     Rear Yard: | 10 feet |
| Maximum Building Coverage: | 40% |
| Maximum Impervious Coverage: | 45% |

*Id*. § 25-2-492(D) (2004).

[3] A Neighborhood Conservation and Combining District (an "NCCD"), for example, is a regulation modifying the "use and site development regulations of a base district . . . in accordance with a neighborhood plan." *Id*. § 25-2-371 (2004).

2

Association (the "Association") and the Church. Among the many issues discussed was the Church's need for more parking. The parties came to a mediated resolution, which in 1990 was incorporated by the City into an ordinance known as the "Hyde Park Conservation and Combining District No. 1" (the "Hyde Park NCCD"). Austin, Tex., Code of Ordinances No. 900830-Q (1990). The Hyde Park NCCD modified the site-development standards applicable to the Church's property and authorized, among other things, a multi-storied parking facility "on all or a portion of the western half of [T]ract 2" within the applicable setback lines.[4]

In 2000, the Church filed an application with the Director of the Planning and Development Department (the "Director") for a site-development permit to construct the parking garage on the western half of Tract 2. After the Director approved the permit, the Association and other "interested parties" filed "Site Plan Appeal[s]," alleging that the site plan, specifically the size of the proposed parking garage, did not comply with the Hyde Park NCCD and the City's LDC. The Church argued that under the Hyde Park NCCD it had the right to build the parking garage on the entire western half of Tract 2 subject only to the setback and height restrictions. Opponents argued that the property was still subject to the LDC and its impervious-cover limitations. The City Council heard the appeals and then suspended the Church's permit.

---

[4] A "setback line" is "a line within a lot parallel to and measured from a corresponding lot line, forming the boundary of a yard and governing the placement of structures and uses on the lot." *Id*. § 25-1-21(94) (2004). The boundaries applicable here were established relative to 39th and 40th Streets, Avenue D, and an alley running north/south that divided Tract 2 in half. The Church already had a five-story parking garage on the eastern half of Tract 2, and the setbacks applicable to the new garage were to mirror the setback restrictions applicable to the existing facility.

3

The Church sued the City, challenging the City Council's authority to hear the appeals and claiming that the permit issued by the Director complied with the Hyde Park NCCD. Both parties moved for summary judgment, advancing different readings of the NCCD: the City argued that the City Council had the authority to entertain the appeals and that the permit suspension was justified;[5] the Church argued that there was no statutory authority for the Council to hear the appeals and that the suspension was unjustified. The district court granted the Church's motion for summary judgment on four grounds: (1) the City Council lacked authority to entertain the neighbors' appeals of the Church's site-development permit; (2) the Church's site-development plan met the applicable administrative standards; (3) the language of the Hyde Park NCCD allowed the church to construct a parking garage on "all or a portion of" the tract following the "height limits and setback requirements specified in the NCCD"; and (4) the "language in the NCCD setting out the development standards for the parking garage" was unambiguous.[6]

The City raises six issues on appeal: whether the Hyde Park NCCD permits the Church to construct a five-story parking garage (1) without regard to impervious-cover limits and (2) covering all of the western half of Tract 2; (3) whether the City's interpretation of the Hyde Park NCCD is entitled to deference; (4) whether the City's interpretation is unreasonable and lacks

---

[5] The City also asserted estoppel as a ground for summary judgment but does not urge that ground on appeal.

[6] The district court initially granted summary judgment for the Church on only the issue that the City lacked authority to hear the appeals. The City filed a motion for new trial, asking that it be allowed to consider the substantive issue of whether the Church's plans satisfied the Hyde Park NCCD, and the district court granted the motion. After a hearing related to the substantive issue, the court again granted the Church summary judgment, this time deciding that the Church's plans satisfied the Hyde Park NCCD.

4

rational support in the text of the Hyde Park NCCD and its legislative history; (5) whether the City Council was authorized to hear the appeal; and (6) whether this Court should consider the substantive issue regardless of the determination of any procedural questions.

**Discussion**

For purposes of this appeal, we will consolidate the City's first four issues into one substantive issue: whether Part 3(f) of the Hyde Park NCCD modified the LDC's site-development standards for impervious cover. The dispute centers on the following sentence found in the Hyde Park NCCD: "A multi-story off-street parking facility can be constructed on all or a portion of the western half of Tract 2" within applicable setback lines. The issue is whether the phrase "all or a portion" modified the LDC's underlying SF-3 impervious-cover limits, thus authorizing the Church to construct a garage on the entire western half of Tract 2 subject only to setback requirements. The disputed passage is found in Part 3(f) of the Hyde Park NCCD, which reads as follows:

> The use of Tract 2 for a multi-story off-street parking facility, surface off-street parking, or single-family residential use is permitted, and all other uses are prohibited. A multi-story off-street parking facility may be constructed *on all or a portion of* the western half of Tract 2 (the "Proposed Garage") and may equal but not exceed the height of the parking facility that currently is located on the eastern half of Tract 2 (the "Existing Parking Facility"), with the following building setback lines:
>
> (i)  from West 40th Street, a distance equal to the building setback of the Existing Parking Facility from West 40th Street;
>
> (ii)  from West 39th Street, a distance equal to the building setback of the Existing Parking Facility from West 39th Street; and
>
> (iii)  from Avenue D, no setback from the public right-of-way is required unless the alley separating the Proposed Garage from the Existing Parking Facility is

5

vacated.  If that alley is vacated, the building setback line shall be 10 feet from the Avenue D property line.

Notwithstanding the preceding sentence, if the Proposed Garage abuts a lot used for a single-family residential use, there shall be a building setback line established 25 feet from the common property line with the abutting lot; and the height of the Proposed Garage shall not exceed 30 feet at any point closer than 50 feet from the common property line with the abutting lot.  Portions of a structure constructed below existing grade may be built with no subterranean setback from public right-of-way and a minimum side yard subterranean setback of five feet, if the subterranean portion of the structure is not visible and the surface is grass and/or landscaped.  Development of surface parking on a portion of Tract 2 shall be subject to the approval by the [Director] of a site plan that conforms with the NCCD plan attached and incorporated into this ordinance as Exhibit "B."  Site development standards otherwise established by the Land Development Code are hereby modified to the extent necessary to authorize the surface parking development conforming to the NCCD plan attached as Exhibit "B."[7]

Austin, Tex., Code of Ordinances No. 900830-Q, Part 3(f) (1990) (emphasis added).

## A.  Standard of Review

Statutory construction and the propriety of a summary judgment are questions of law, and we review a trial court's summary judgment based on statutory construction *de novo*.  *City of Pflugerville v. Capital Metro. Transp. Auth.*, 123 S.W.3d 106, 109 (Tex. App.—Austin 2003, pet. denied).  When both parties move for summary judgment, each bears the burden of establishing its entitlement to summary judgment as a matter of law.  *Id*.  If a trial court grants one motion and denies another on specific grounds, we consider all grounds presented to the district court, preserved on appeal, and necessary for a final disposition.  *Id*.

---

[7] Exhibit B is a sketch of the surface parking lot that could be located on Tract 2.  According to an affidavit entered into evidence, that surface lot was constructed and has been in use since about 1990.  The existing lot has 88.2% impervious cover, and the proposed parking garage would have 85.8% impervious cover.

In construing an ordinance, we use the same rules as we do when construing a statute and seek to discern the legislative intent. *Board of Adjustment v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002). Our role in construing a statute is well-established:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere . . . . They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*RepublicBank Dallas*, *N.A. v. Interkal*, *Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (quoting *Simmons v. Arnim*, 220 S.W. 66, 70 (Tex. 1920)).

In making our determination, we look first to the plain meaning of the words of the ordinance. *See Wende*, 92 S.W.3d at 430; *Upjohn Co. v. Rylander*, 38 S.W.3d 600, 607 (Tex. App.—Austin 2000, pet. denied). If a legislative body does not define words or phrases, we should apply their ordinary meaning and will not enlarge the meaning of words or phrases beyond their ordinary meaning. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex. 1993). We are to read every word, phrase, and expression as if it were deliberately chosen and presume that words excluded from the statute were excluded purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied). When construing a phrase within a statute, we should consider the associated words and the context in which they appear. *Bridgestone/Firestone*, *Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994). If the meaning of an ordinance is doubtful or ambiguous, we will give serious consideration to the

construction given it by the governmental body charged with its enforcement or administration. *Texans to Save the Capitol*, *Inc. v. Board of Adjustment*, 647 S.W.2d 773, 776 (Tex. App.—Austin 1983, writ ref'd n.r.e.). However, "Texas courts have universally adopted the 'clear and unambiguous meaning' test," under which we may "interpret the ordinance *only* if the language's meaning is not clear and plain on the law's face. If the language is clear and plain, the court is bound by the statutory language's 'plain meaning.'" *Texans to Save the Capitol*, 647 S.W.2d at 775 n.4; *see also Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944) ("in view of the doubt as to the meaning of the provisions of" statute in question, long-standing construction by governmental entity charged with statute's enforcement is entitled to serious consideration); *Seawall East Townhomes Ass'n*, *Inc. v. City of Galveston*, 879 S.W.2d 363, 364 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("When the words in an ordinance or statute are clear, the ordinance must be given its literal interpretation."); *but see Tennessee Gas Pipeline Co. v. Rylander*, 80 S.W.3d 200, 203 (Tex. App.—Austin 2000, pet. denied) (in construing statute, "courts *may* consider, regardless of whether the statute is ambiguous," statute's administrative construction (emphasis added)). In other words, if the disputed phrase is clear and unambiguous, extrinsic aids and rules of construction are inappropriate and the ordinance should be given its common meaning.

### B. Analysis

Our objective in construing the Hyde Park NCCD is to discern the City's legislative intent, considering first the plain meaning of the words used in the NCCD. *See Wende*, 92 S.W.3d at 430. We should discern a meaning that is consistent with the LDC as modified by the Hyde Park NCCD. *See Meritor Auto.*, *Inc. v. Ruan Leasing Co.*, 44 S.W.3d 86, 90 (Tex. 2001) ("When

8

possible, each sentence, phrase, clause and word is given effect, so that the statute makes sense as a cohesive whole."); *Hammond v. City of Dallas*, 712 S.W.2d 496, 498 (Tex. 1986) ("We must interpret a city charter by reading it as a whole and harmonizing its various provisions as far as possible.").

Initially, we note that under the Hyde Park NCCD, Tract 2 was not restricted to use for a single-family residence or duplex but could also be used for surface parking or a parking garage. If used for a parking garage, the garage could at most be as tall as the existing five-story parking garage located on the eastern half of Tract 2. The garage could be no closer to 39th and 40th Streets than the existing parking garage, no setback was required from Avenue D unless the alley separating the existing garage and the proposed garage was vacated, and a twenty-five foot setback was required if the proposed garage abutted a lot used for a single-family residence. Thus, Part 3(f) clearly modified the use, height, and setback restrictions otherwise applicable to property zoned SF-3. The only missing component was some provision for the parking garage's overall bulk. The issue, then, is whether the phrase "*on all or a portion of* the western half of Tract 2" modified the LDC's impervious-cover limitations.

The word "on" indicates "position" or "location." *Webster's Third New International Dictionary* 1574 (Phillip B. Gove ed., 1986). "All" means the "whole amount or quantity of" or "as much as possible." *Id*. at 54. "Portion" means "part of the whole" or "limited amount or quantity." *Id*. at 1768. Using the plain meaning of the phrase "on all or a portion of," we must conclude that the phrase expressed in quantitative terms the permissible bulk or size of the parking garage. We can discern no other meaning for the phrase than to authorize the Church to build on as much of the

9

western half of Tract 2 as it saw fit, provided the outer boundary of the building did not encroach upon the portion of the tract reserved by the setbacks.

It is helpful to read Part 3(f) without the disputed language. When we compare "[a] multi-story off-street parking facility may be constructed on the western half of Tract 2," with "[a] multi-story off-street parking facility may be constructed on all or a portion of the western half of Tract 2," it is clear that the Hyde Park NCCD was intended to modify the LDC limitations to allow the Church to use the entire western half of Tract 2, less the setback restrictions, for the construction of a parking garage. Without the "on all or a portion" language, the Hyde Park NCCD simply authorizes the Church to construct a parking garage somewhere on the western half of Tract 2. With the phrase, the Hyde Park NCCD authorizes the Church to construct a parking garage on as much of the western half of Tract 2 as it chooses, within the setback lines. We must presume the phrase was intended to have meaning and we can comprehend no other meaning for the phrase other than to establish the size of the parking garage. Consequently, we can only conclude that Part 3(f) establishes all relevant site-development standards: the parking garage's height, location, and bulk.

The City argues that this interpretation conflicts with other portions of the Hyde Park NCCD, specifically, Parts 3(j), (k), and (n). Part 3(j) reads:

> Development of *all or any portion* of Tract 6 shall be subject to the approval by the [Director] of a site plan that conforms with either of the NCCD plans attached and incorporated into this ordinance as Exhibit[s] . . . . Site development standards otherwise established by the [LDC] are hereby modified to the extent necessary to authorize development in accordance with either of the NCCD plans attached.

Austin, Tex., Code of Ordinances No. 900830-Q, Part 3(j) (1990) (emphasis added). Part 3(k) refers to development on Tract 7 and is similarly worded, but lists specific activities for which the property may be used and specific uses to which it may *not* be put. *Id.*, Part 3(k). Part 3(n) states:

> The decision of the [Director] to approve or deny a site plan submitted to develop *all or any portion* of Tract 2, 6, 7, or 8 in accordance with an NCCD plan attached as an exhibit to this ordinance, if appealed, shall be appealed directly to the City Council.

*Id.*, Part 3(n) (emphasis added). The City contends that our interpretation of "all or a portion" in Part 3(f) is inconsistent with the use of the phrase in Parts 3(j), (k), and (n) of the Hyde Park NCCD. We disagree.

The descriptive phrase in dispute here has the same meaning in all four parts but is used differently in Part 3(f) than in the other three parts.[8] Part 3(n) simply governs an appeal from the Director's approval of certain development plans. Parts 3(j) and (k) allow development in conformity with plans that were prepared and attached to the Hyde Park NCCD as exhibits; the exhibits, not the text of the NCCD, show what portion of each tract is subject to use. In Parts 3(j), (k), and (n), "all or any portion" does not grant any authority to develop the entirety of the referenced tracts, nor is it used to describe the surface area that may be used. Only in Part 3(f)'s provisions related to the parking garage does the phrase describe the surface area that may be put to a specified

---

[8] We also note that the phrase "all or a portion" appears four times in the LDC: sections 25-6-55 concerning the dedication of a right of way, 25-6-323 concerning alleyways, 25-6-501 concerning off-street parking, and 25-4-81 concerning applications for plat approvals. *See* Austin, Tex., Land Dev. Code §§ 25-4-81, 25-6-55, 25-6-323, 25-6-501 (2004). Its use in those four instances is consistent with our interpretation of its meaning in the Hyde Park NCCD, namely, to describe the whole amount or some portion thereof.

11

use.  Thus, we see nothing in Parts 3(j), (k), or (n) that would lead us to a different interpretation than the one we have reached.

The City also points out that the "all or any portion" phrase in (j) and (k), as well as in Part 3(f) in conjunction with plans for a surface parking lot, is followed by what the City calls the "omnibus waiver," which states, "Site development standards otherwise established by the LDC are hereby modified."  The City opines that the omnibus waiver would be superfluous if "all or any portion," without more, was intended to waive the provisions of the LDC.

We conclude that Part 3(f) includes no omnibus waiver in connection with the parking garage option because such a waiver was unnecessary.  The Hyde Park NCCD expressly "modified" the LDC's site-development standards generally applicable to property zoned SF-3.[9]  We further note (i) that the Hyde Park NCCD distinguished between plans outlined in the text of the ordinance, such as this proposed garage, and those attached as exhibits to the NCCD in the form of drawings of planned parking lots and (ii) that the omnibus waiver, in every instance, was used in conjunction with a "plan attached as an exhibit."  The omnibus waiver was used in Part 3(f) only as it related to the option of constructing a surface parking lot on the western half of Tract 2, a sketch of which was "attached as an exhibit."  There is no exhibit, however, depicting the size and shape of a proposed parking garage.  The omnibus waiver, then, applies only to those projects depicted in exhibits attached to the Hyde Park NCCD.

_____

[9] Part 2 of the Hyde Park NCCD states that construction "shall conform with the use and site development regulations established by the applicable base zoning district and all other applicable regulations established by the [LDC], as such regulations may be modified by the NCCD regulations set forth in PART 3 of this ordinance."  Austin, Tex., Code of Ordinances No. 900830-Q, Part 2 (1990).  Part 3(a) states, "The applicable provisions of [the LDC] are modified in the Hyde Park Civic NCCD in accordance with the subparagraphs of this PART 3."  *Id.*, Part 3(a).

It is worth noting that the impervious cover created by the surface lot, which the Church constructed in about 1990 and which has been in use for the past fourteen years, amounts to 88.2% of the total surface area of the tract in question—more than the impervious cover created by the proposed parking garage. The impervious cover allowed at the inception of the Hyde Park NCCD demonstrates a legislative intent to allow impervious cover on the tract well in excess of the limits set out in the LDC and demonstrates that the City was aware of and had considered the impervious cover issue well before plans for this parking garage were presented for approval.

The City also argues that the "on all or a portion" language is too "informal" to be considered to have waived the impervious-cover limitations. The City points us to the language in Part 3(h) which specifically limits the amount of impervious cover on Tract 4 to ninety percent. The City contrasts the use of a specific percentage with the use of the more general "all or a part of" and concludes that, if the Hyde Park NCCD was intended to modify the LDC's impervious-cover limits, it would have used similarly formal language.

We believe it is clear that when the Hyde Park NCCD granted the Church the right to construct a parking garage "on all or a portion of the western half of Tract 2," absent some indication to the contrary, the word "all" served to fix the amount of surface area and, in doing so, modified the usual impervious-cover limitations placed on property zoned SF-3.[10] In short, we find that Part 3(f) is clear and unambiguous and sets out all the criteria necessary to determine the size

_____

[10] We note the similarly "informal" language used to fix the height of the garage—"equal but not exceed[ing] the height of the parking facility that currently is located on the eastern half of Tract 2," with further restrictions depending on the abutting lot—and the setback lines—"a distance equal to the building setback of the Existing Parking Facility" from 39th and 40th Streets. What is important is that each standard, including the "all or a portion" language, can be given a certain measurement fixing the maximum size of the parking garage.

13

of the parking facility. Use of the entire western half of the tract for a parking garage is limited only by the height and setback restrictions, which serve to confine the garage to a certain portion of the tract. This interpretation is consistent with the rest of the Hyde Park NCCD. Accordingly, we overrule the City's first four issues.

## Conclusion

In construing the Hyde Park NCCD, we have given effect to the plain meaning of the disputed provisions. We conclude that in granting the Church the right to construct a parking garage "on all or a portion of the western half of Tract 2," the Hyde Park NCCD modified the LDC's building- and impervious-cover limitations. Having determined the substantive question before us, we need not address the City's fifth and sixth issues.[11] We affirm the district court's judgment granting the Church's motion for summary judgment and denying the City's motion.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: November 18, 2004

---

[11] Issues five and six concern whether the City Council had the authority to entertain a direct appeal from the Director's decision to grant the development permit under the Hyde Park NCCD. However, because we have examined the substance of the City's decision, we need not discuss whether the appeals procedure should apply to this situation.