The CITY OF ALAMO HEIGHTS and the Board of Adjustment of the City of Alamo Heights, Appellants,

v.

Ken BOYAR and Lisa Boyar, Appellees.

No. 04–04–00179–CV.

Court of Appeals of Texas, San Antonio.

Jan. 5, 2005.

Samuel H. Bayless, Michael S. Brenan, San Antonio, for appellants.

Jacqueline M. Stroh, Thomas H. Crofts, Jr., Crofts & Callaway, P.C., Richard P. Corrigan, San Antonio, for appellees.

Sitting: ALMA L. LÓPEZ, Chief Justice, CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by CATHERINE STONE, Justice.

This case involves a writ of certiorari in the district court from a decision of the Zoning Board of Adjustment for the City of Alamo Heights interpreting several setback provisions of the Alamo Heights Zoning Code. The City of Alamo Heights and the Zoning Board of Adjustment for the City of Alamo Heights appeal the district court's judgment which essentially reversed the Zoning Board's decision and allowed the Boyars a variance to deviate from the City's setback requirements. We reverse and remand the cause to the trial court.

### BACKGROUND

Kenneth and Lisa Boyar own a condominium in Alamo Heights, Texas. After purchasing the property, the Boyars proceeded to completely enclose their backyard with screens.[1] According to the Boyars, before they screened in their backyard, their property suffered from various intrusions from their neighbors' properties, including noise, lights, debris, insects, rodents, and trespassers.[2] Although the Boyars' screened structure prevents insects and other debris from intruding onto their property, it permits the wind, rain, and sunlight to enter their yard.[3] The Boyars constructed their screened structure without a building permit.

After the Boyars enclosed their backyard with screens, the Boyars applied to the City of Alamo Heights for a building permit. The City denied the Boyars' application because their screened structure did not comply with the side-yard and rear-yard setback provisions of the Zoning Code. The City stated it denied the Boyars' application because the Boyars' "minimum side yard would be zero (0)ft instead of the 15ft required by Section 10(D)(2)(c) [of the Alamo Heights Zoning Code]; and the rear yard setback would be zero (0)ft instead of the 25ft required by Section 10(E)(1) of the [Alamo Heights Zoning Code]."

When the Boyars petitioned for a variance to deviate from the applicable zoning ordinances, the Zoning Board of Adjustment for the City of Alamo Heights denied the request, citing sections 10(D)(2)(c) and 10(E)(1) of the Zoning Code in support of its ruling. The Boyars subsequently asked the district court, via writ of certiorari, to review the Zoning Board's decision under section 211.011 of the Texas Local Government Code. The City and the Zoning

---

1. The Boyars placed screens above and on all three sides of their backyard by mounting the screens to their condominium and to the concrete wall surrounding their yard. To complete their project, the Boyars had to remove a preexisting arbor. The arbor was approximately 16 feet in height, covered by a roof, and extended at least three feet over the Boyars' property line.

2. For purposes of this appeal, the Boyars' improvement shall be referred to as a "screened structure."

3. The screened structure, however, reduces ultraviolet rays by 35 percent.

Board responded by filing a counterclaim seeking an injunction requiring the Boyars to either modify or remove the screened structure to bring it in compliance with the Zoning Code. After a bench trial, the trial court found that the Zoning Board incorrectly interpreted or applied the provisions of the Zoning Code to the Boyars' screened structure. The trial court further found that the Zoning Board had abused its discretion by failing to grant the Boyars a variance because "[a] literal enforcement of the applicable [o]rdinance would result in unnecessary hardship on the Boyars." Thus, the trial court modified the Zoning Board's decision to allow the Boyars a variance for their screened structure.[4]

### STANDARD OF REVIEW

■ When a party challenges a zoning board's action by filing a writ of certiorari, the district court sits as a court of review to determine the sole question of the legality of the zoning board's order. TEX. LOC. GOV'T CODE ANN. § 211.011 (Vernon Supp. 2004); *City of San Angelo v. Boehme Bakery*, 144 Tex. 281, 190 S.W.2d 67, 70 (1945). The board's order is presumed to be legal, and the party attacking the order has the burden of establishing its illegality. *Currey v. Kimple*, 577 S.W.2d 508, 512 (Tex. Civ.App.-Texarkana 1978, writ ref'd n.r.e.).

■ To establish that an order of a zoning board is illegal, the party attacking the order must present a very clear showing that the board abused its discretion. *Boehme Bakery*, 190 S.W.2d at 71. A board abuses its discretion if it acts "without reference to any guiding rules and principles," *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), or "clear[ly] fail[s] to analyze or apply the law correctly." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). The reviewing court must not, however, put itself in the position of the board and substitute its discretion for that of the board. *Boehme Bakery*, 190 S.W.2d at 70. Whether a zoning board of adjustment abused its discretion is a question of law for the trial court. *Bd. of Adjustment v. Patel*, 882 S.W.2d 87, 89 (Tex.App.-Amarillo 1994, writ denied); *Dengler v. City of Groves*, 997 S.W.2d 418, 420 (Tex.App.-Beaumont 1999, pet. denied). This court reviews a trial court's decision on a question of law de novo. *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998).

### PLAIN LANGUAGE OF THE ZONING CODE

■ The first issue we must resolve is whether the Zoning Board correctly analyzed and applied the provisions of the Alamo Heights Zoning Code when it considered the Boyars' request for a variance. The Zoning Board relied on sections 10(D)(2)(c) and 10(E)(1) of the Zoning Code to deny the Boyars' request for a variance. Because the parties agree that the Zoning Board incorrectly relied on section 10(D)(2)(c) to deny the Boyars' variance request, we must only consider the applicability of section 10(E)(1) on appeal.[5]

---

4. The court conditioned its decision on the Boyars camouflaging their screened structure with vegetation.

5. Section 10(D)(2)(c) of the Zoning Code provides:

Except as hereinafter provided, no building or structure or part thereof shall be erected, altered or converted for any use permitted in the district in which it is located unless it is in conformity with all the minimum regulations herein specified for lot area, lot width, lot coverage and front, side and rear yards: ... In the following zoning districts the minimum required side yard shall be in accordance with the following schedule: ... (D) Side yard. No building, structure or use shall hereafter be located so as to

Section 10(E)(1) of the Zoning Code provides that "[n]o building, structure or use shall hereafter be located so as to have a smaller rear yard than" 25 feet. ALAMO HEIGHTS ZONING CODE Appendix A § 10(E)(1). The Zoning Code defines "building" as "[a]ny structure designed, built or intended for shelter, enclosure of persons, animals, chattels or movable property of any kind." *Id.* at § 20(A)(8). "Structure" is defined "the same as a building, but shall in addition, include such items as a free standing ground sign and pylon when erected on a base and not made integral with a building." *Id.* at § 20(A)(43). The Zoning Code defines a "yard" as an "open, unoccupied space (except for vegetation and surfacing) other than a court, on the lot in which a building is situated and which is unobstructed except as provided herein by any building from the ground to the sky." *Id.* at § 20(A)(44). It further defines a "rear yard" as "[a]n open, unoccupied space, except for accessory buildings as herein permitted, extending across the rear of a lot from one side lot line to the other side lot line and having a depth between the main building and the rear lot line. The required rear yard shall have a minimum dimension as specified in the district in which the lot is situated." *Id.* at § 20(A)(46). Lastly, the Zoning Code defines an "open space" as the "[a]rea included in any side, rear or front yard or any unoccupied space on the lot that is open and unobstructed to the sky except for the

ordinary projection of cornices, eaves or porches." *Id.* at § 20(A)(35).

The dispute in this case focuses primarily on the definition of "structure" as provided by the Zoning Code. In construing an ordinance, courts use the same rules as when construing a statute and seek to discern the intent of the enacting body. *Bd. of Adjustment v. Wende,* 92 S.W.3d 424, 430 (Tex.2002). The court's role in construing a statute is well-established:

> Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere.... They are not responsible for omissions in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the words of the law in their plain sense fairly sanction and will clearly sustain.

*RepublicBank Dallas, N.A. v. Interkal, Inc.,* 691 S.W.2d 605, 607 (Tex.1985) (quoting *Simmons v. Arnim,* 110 Tex. 309, 220 S.W. 66, 70 (Tex.1920)).

When making our determination, we look first to the plain meaning of the words of the ordinance. *Wende,* 92 S.W.3d at 430. If words and phrases are not defined by the enacting body, the

---

have a smaller side yard on each side of a building than hereinafter specified by the following schedule: ... (2) Special side yard regulations ... (c) Where multiple-family dwellings are arranged on a lot with a building side having a length greater than thirty-five (35) feet and being approximately parallel to the side lot line, or where the side of such building is parallel to another building in a project, a side yard of fifteen

(15) feet shall be provided on each side of each building. The effect of such side yard shall be that the walls of buildings arranged as parallel structures shall be a minimum average of thirty (30) feet apart and that no canopy or balcony shall extend into such side yard for a distance greater than five (5) feet.

ALAMO HEIGHTS ZONING CODE Appendix A § 10(D)(2)(c).

courts should apply the ordinary meaning of the words or phrases. *Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d 937, 939 (Tex.1993). Courts are to read every word, phrase, and expression as if it were deliberately chosen and presume that words excluded from the statute were excluded purposefully. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex.App.-Austin 2002, pet. denied). We should consider the associated words and the context in which they appear when construing a phrase within a statute. *Bridgestone/Firestone, Inc. v. Glyn–Jones*, 878 S.W.2d 132, 133 (Tex. 1994).

■ If the meaning of an ordinance is doubtful or ambiguous, the court should give serious consideration to the construction given by the body charged with its enforcement or administration. *Texans to Save the Capitol, Inc. v. Bd. of Adjustment*, 647 S.W.2d 773, 776 (Tex.App.-Austin 1983, writ ref'd n.r.e.). "Texas courts[, however,] have universally adopted the 'clear and unambiguous meaning' test," under which courts may "interpret the ordinance only if the language's meaning is not clear and plain on the law's face. If the language is clear and plain, the court is bound by the language's 'plain meaning.'" *Id.* at 775 n. 4; *see also Seawall East Townhomes Ass'n, Inc. v. City of Galveston*, 879 S.W.2d 363, 364 (Tex.App.-Houston [14th Dist.] 1994, no writ) ("When the words in an ordinance or statute are clear, the ordinance must be given its literal interpretation."). "In other words, if the disputed phrase is clear and unambiguous, extrinsic aids and rules of construction are inappropriate and the ordinance should be given its common meaning." *City of Austin v. Hyde Park Baptist Church*, 152 S.W.3d 162, 166 (Tex.App.-Austin 2004, no pet. h.).

Our objective in construing the Zoning Code is to discern the Alamo Heights City Council's intent, considering first the plain meaning of the words used in the Code. The setback provisions of the Zoning Code apply only to buildings and structures. *See* ALAMO HEIGHTS ZONING CODE Appendix A § 10(E)(1). A structure is defined as anything "designed, built or intended for shelter, enclosure of persons, animals, chattels or movable property of any kind." *Id.* at §§ 20(A)(8),(43). The City Council did not define "enclosure" in the zoning ordinance; thus we use the ordinary meaning of the word when interpreting the ordinance. *See Monsanto Co.*, 865 S.W.2d at 939. Black's Law Dictionary defines "enclosure" as "Land surrounded by some visible obstruction. An artificial fence around one's estate." BLACK'S LAW DICTIONARY 473, 687 (5th ed.1979). It further defines "enclose" as "To surround; to encompass; to bound; fence, or hem in, on all sides. To shut up." *Id.* Webster's Dictionary defines "enclosure" as "the act or action of enclosing: the quality or state of being enclosed; something that encloses; something enclosed." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 409 (9th ed.1991). It further defines "enclose" as "to close in: surround; to fence off (common land) for individual use; to hold in: confine." *Id.*

On its face, the ordinance was plainly intended to extend to a structure such as the screened structure erected by the Boyars. The Boyars' screened structure was designed, built, and intended for the enclosure of persons. The record indicates the Boyars' property suffers intrusions from its commercial and residential neighbors. These intrusions include noise, lights, leaves, debris, insects, rodents, and people. It is undisputed that the Boyars' screened structure surrounds the Boyars while in their backyard and alleviates/eliminates the intrusions onto their property by creating a barrier between the Boyars and

the abutting properties. Thus, the Boyars' screened structure is a structure as defined by the plain language of the ordinance.

The Boyars argue that the requirements of the Zoning Code do not apply to them because their screened structure is essentially an "open-air patio cover," which is not regulated by the Code. The Boyars note that the Alamo Heights Building Code has specific provisions addressing "patio covers" whereas the Zoning Code does not. They claim the Zoning Code's failure to expressly address patio covers signifies an intention not to regulate the erection of screened structures like theirs. Regardless of the term the Boyars use to describe their backyard improvement, it clearly falls within the definition of a structure as provided by the Zoning Code. Therefore, we do not believe the Zoning Code's omission of language pertaining to patio covers is of any consequence in the case at bar.

The Boyars further argue that their screened structure does not violate section 10(E)(1) of the Zoning Code. They claim their "screened structure does not decrease the amount of available ... rear-yard space any more than a fence does. The Boyars continue to have a backyard to the extent they ever had one." This argument, however, ignores the fact that the Zoning Code essentially requires a backyard to be open and unobstructed to the sky. *See* ALAMO HEIGHTS ZONING CODE Appendix A §§ 20(A)(35), (44), (46). Here, the Boyars' backyard is not open and unobstructed to the sky. The Boyars' screened structure, although permeable to some degree, inhibits the free movement of people, animals, and objects in the area above their yard.

### UNDUE HARDSHIP

The next issue we must resolve is whether the Zoning Board abused its discretion by denying the Boyars' variance request. The Boyars claim the Board erroneously denied their variance request because they provided substantive evidence that a literal enforcement of the provisions of the ordinance would result in undue hardship. According to the Boyars, Mrs. Boyar would suffer significantly from the loss of the screened structure because she would be unable to enjoy her backyard due to her sun and insect allergies. They further claim that they would suffer a $27,000 financial loss if required to remove their screened structure because it cost $17,000 to install and will cost another $10,000 to remove.

Under state law, a board of adjustment "may authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done." TEX. LOCAL GOV'T CODE ANN. § 211.009(a)(3) (Vernon 1999). The Alamo Heights Zoning Code further authorizes the Board to grant variances from zoning regulations. Section 17(E) of the Zoning Code provides:

> When, in its judgment, the public convenience and welfare will be substantially served and the appropriate use of the neighboring property will not be substantially or permanently injured, the Board of Adjustment may in specific cases ... authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and substantial justice done.

ALAMO HEIGHTS ZONING CODE Appendix A § 17(E)(3). Whether a hardship exists is a question of fact for the Board. *Ferris v. City of Austin,* 150 S.W.3d 514 at 521–22 (Tex.App.-Austin 2004, no pet.). "On appeal, the issue is not whether there was hardship, but whether the trial court, after examining all the evidence, could conclude as a matter of law that the Board had evidence of a substantive and probative nature before it upon which it could conclude that a literal enforcement would result in an unnecessary and unique hardship." *Id.*

▮ Importantly, "in order to justify a variance, a hardship must not be self-imposed, nor financial only, and must relate to the very property for which variance is sought, *i.e.,* a condition unique, oppressive, and not common to other property." *Town of S. Padre Island v. Cantu,* 52 S.W.3d 287, 290 (Tex.App.-Corpus Christi 2001, no pet.). Likewise, the hardship must not be personal in nature. *Currey,* 577 S.W.2d at 513 ("An example of a personal or self-created hardship might be a situation in which the owner of a square lot divides it into two triangles and then tries to secure a variance in order to sell the property at a high price. In such an instance, the hardship would be self-created and if the owner could not sell the triangular pieces of property without the variance, then the hardship would be personal.").

Here, a literal enforcement of the ordinance would undeniably result in hardship to the Boyars. The resulting hardship, however, would be only personal or financial in nature. The Boyars have indicated that Mrs. Boyar will not be able to enjoy the use of her backyard without the screened structure due to her sun and insect allergies. Such hardship is personal to Mrs. Boyar and is not a hardship connected with the configuration or the uniqueness of her property. The Boyars further cite the substantial financial hardship they would endure if required to remove their screened structure. Unfortunately, financial loss alone is insufficient to justify a variance. Based on the foregoing, we believe the Zoning Board correctly applied the provisions of the Zoning Code to deny the Boyars' variance request. Consequently, we hold the trial court substituted its judgment for that of the Zoning Board when it modified the Board's decision to allow the Boyars a variance to deviate from the City's setback requirements.

## INJUNCTIVE RELIEF

▮ The final issue we must resolve is whether the trial court should have granted the City and the Zoning Board's request for an injunction to enjoin the Boyars' violation of the Zoning Code. Section 22 of the Alamo Heights Zoning Code provides:

> Any person or corporation who shall fail to comply with any provisions of this ordinance, or any of the requirements hereof ... shall be liable to injunctive action, being subject to being enjoined and mandatorily enjoined in any court of competent jurisdiction....

ALAMO HEIGHTS ZONING CODE Appendix A § 22. In this case, the trial court concluded the Zoning Board incorrectly interpreted and analyzed the provisions of the Zoning Code with respect to the Boyars. As a result, the court did not consider the merits of the City and the Board's request for injunctive relief. Because we have determined the Zoning Board did not abuse its discretion regarding the Boyars' screened structure, we hold the trial court erred by not considering the City and the Board's request for an injunction.

## CONCLUSION

The Zoning Board did not abuse its discretion in this case because the Board

correctly analyzed and applied the provisions of the Zoning Code to the Boyars' screened structure. Thus, the trial court substituted its judgment for that of the Zoning Board when it modified the Board's decision to allow the Boyars a variance to deviate from the City's setback requirements. Accordingly, the judgment of the trial court is reversed and the cause is remanded to the trial court for entry of judgment in favor of the City and the Board. Because the trial court failed to consider the merits of the City and the Board's request for injunctive relief during the previous proceedings, the trial court is further instructed to address the request for an injunction.