**Opinion issued October 20, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00888-CV

————————————

**GLEN SUMNER, Appellant**

**V.**

**BOARD OF ADJUSTMENTS OF THE CITY OF SPRING VALLEY VILLAGE, TEXAS, THE CITY OF SPRING VALLEY VILLAGE, TEXAS, ART FLORES, RICHARD R. ROCKENBAUGH, AND BETTY LUSK, Appellees**

---

**On Appeal from the 164th District Court**
**Harris County, Texas**
**Trial Court Case No. 2010-45239**

---

## MEMORANDUM OPINION

In five issues, Glen Sumner appeals from the trial court's order granting the plea to the jurisdiction and motion for summary judgment filed by the Board of Adjustments of Spring Valley Village, The City of Spring Valley Village, Art

Flores, Richard Rockenbaugh, and Betty Lusk. Sumner argues that (1) insufficient evidence supported the Board's decision to grant a variance of a city ordinance; (2) the Board abused its discretion in upholding Flores's grant of a Certificate of Occupancy and Compliance; (3) he has a property interest in his neighbor's compliance with City ordinances; (4) he was denied a constitutional right to cross-examination of witnesses at a Board hearing; and (5) the City's adoption of various ordinances violated his substantive due process rights. Finding no error, we affirm.

## Background

The City of Spring Valley Village is a zoned city in Texas. The Board of Adjustments of Spring Valley Village, also called the Zoning Board of Adjustment, considers requests for variances to the City's ordinances. Flores is the City's building official and zoning administrator. Rockenbaugh, now retired, was the City Administrator at all relevant times. Lusk is the secretary of the Board and the City. We refer to the defendants collectively as Spring Valley.

Since 1983, Sumner has owned and lived in a property in the Spring Oaks Section 3 subdivision of the City. His neighbor, Janelia Tse, purchased an adjacent property in 2009, where she and her husband, Passopon Khanausakpkul—together, known as the Khans[1]—live.

---

[1] All parties have referred to Tse and Khanausakpkul as the Khans, and the Residential Building Permit that they filed with the City identifies the owner of the

In 2009, the Khans applied for a building permit from the City to construct an addition to their house, with a second story. The City granted the permit in December 2009 or January 2010. According to the survey that the Khans presented to the City with their application, the addition would be located 8.1 feet from the property line that—they believed—separated their property from Sumner's.

After the Khans completed structural work on the new addition, Sumner suspected that the addition violated the City's Building Setback Ordinance, which provides, "For adjoining side property lines, the side building setback shall be not less than eight feet (8')." SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 05:02:03.09.03.01 (2006). Sumner hired GeoSurv, a land surveying company, to determine the property line between the Khans' lot and his lot. GeoSurv reviewed deed records associated with the properties and discovered an apparent error in the conveyance history of Sumner's lot.

Sumner's property consists of Lot 274 and a portion of what was originally designated Lot 273. Lot 273 is a parcel that was originally 73.0 feet wide. Sumner's earliest predecessors in title had conveyed the southeasterly 36.5 feet of Lot 273, but later conveyances described his property as including only the southeasterly 35.5 feet of the lot. By comparison, the Khans' lot included the northwesterly 36.5 feet of Lot 273. This resulted in an almost one-foot strip of land

property in question as "Pat Khan." For clarity, we will likewise refer to Tse and Khanausakpkul as the Khans.

3

situated between the Khan and Sumner properties and not included in either the Khan or Sumner deeds.[2] GeoSurv assumed that the number 35.5 feet in Sumner's deed was a scrivener's error and that the Khans' property line was correct. GeoSurv concluded that the Khans' addition was 7.5 feet from the Khans' property line. This meant that the addition was approximately six inches closer to the property line than the 8 feet permitted by the Building Setback Ordinance.

Sumner reported GeoSurv's findings to the City's building official, Flores. Flores then notified the Khans, through their contractor, that he could not issue a Certificate of Occupancy and Compliance because the addition did not comply with the Building Setback Ordinance. On June 7, 2010, the Khans applied to the Board for a variance of that ordinance.

On June 29, the Board held a hearing on the Khans' variance application. At the hearing, the Khans' surveyor, Keith White, and contractor, Paul Waller, admitted that the survey that White had prepared and that Waller had submitted as part of the Khans' application for a permit was incorrect. Indeed, they both testified that the entire neighborhood had surveying and platting problems due to errors over the years and movement of various survey markers. Sumner attended

---

[2] GeoSurv also discovered apparent errors in earlier surveys of each parcel and in the platting of the neighborhood, with the result that the widths of the Khan and Sumner parcels varied from one end of their not-quite-common boundary to the other. As a result, the strip of no-man's-land between the parcels was somewhat less than one foot wide.

that hearing but was not permitted to ask any questions because he was not a party to the variance application proceeding. He also did not submit any questions for the Board to ask any witnesses. After the hearing, on July 12, the Board granted the variance application.

Meanwhile, on July 9, Sumner wrote to Flores that he believed that an air conditioner on the Khans' property violated the Mechanical Setback Ordinance, which provides, "Free-standing mechanical equipment shall not be placed closer than five (5) feet to the property line." SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 05:02.13 (1991). He also complained that the new addition exceeded the City's Height Zoning Ordinance, which provides, "No building or structure more than thirty-six feet (36') in height shall be erected in Dwelling District 'A.'" SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 05:02:03.02 (1991). The height of a building is determined by the City's Zoning Ordinance § 03:H.01, which provides:

> The height of a building or structure is the vertical distance above a reference datum (established below) measured to the highest point of: the coping of a flat roof; the deck line of a mansard roof; the highest ridge of a gabled, pitched, or hipped roof; or the highest point of the structure. The reference datum shall be selected by either of the following, whichever yields a greater height of building or structure:
>
> .01    The elevation of the highest adjoining public sidewalk or natural ground surface within a 5-foot horizontal distance of the exterior wall of the building or structure when such sidewalk or natural ground surface is not more than 10 feet above lowest natural grade of the lot.

.02 An elevation 10 feet higher than the lowest grade when the natural ground surface described in Item 1 above is more than 10 feet above the lowest natural grade of the lot.

SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 03:H.01 (1991). Sumner asked Flores to confirm the building height in the Khans' building plans.

On July 12, Flores issued a Compliance Certificate for the Khans' addition. According to Sumner, on July 13, Flores told Sumner that, on the advice of the City's attorney, he would not consider Sumner's complaints regarding the Mechanical Setback Ordinance because any violation of that ordinance was covered by the Board's July 12 variance decision. Sumner alleges that on July 14, Flores told Sumner that he would not consider Sumner's allegations regarding the Height Ordinance.

On July 15, Sumner filed an application with Lusk, the secretary of the Board and the City, requesting a hearing on Flores's decision not to determine whether the Khans' property complied with the Height and Mechanical Setback Ordinances. He requested a ruling that Flores must determine whether the Khans' home complied with those ordinances before the City could issue an occupancy permit. Lusk informed Sumner that the City would not hold a hearing on that appeal. Rockenbaugh confirmed in an email to Sumner that no hearings would be held, explaining, "Your application for appeal of [the Mechanical Setback

6

Ordinance] was not appropriate because that matter has already been decided . . . in the 'Decision of the Board of Adjustment' signed on July 12, 2010."

On July 19, Sumner filed another application with Lusk, appealing only Flores's decision with respect to the Height Ordinance. On September 30, 2010, the Board held a hearing on that issue. At that hearing, the Board heard testimony from Flores that the City's public works director had measured the Khans' addition and found that it complied with the Height Ordinance, as wells as testimony that the Khans' survey showed that it complied. Sumner testified and argued that the height shown on that survey was inconsistent with Flores's drawings and that the height on the survey actually showed the height of the eve of the roof, not the height of the ridge of the roof. Flores testified that the surveyor had told him that the measurement was to the top of the roof. Sumner was not permitted to cross-examine any witnesses and did not submit any questions for any witnesses. At the conclusion of the hearing, the Board denied Sumner's appeal without making any findings regarding the height of the Khans' addition.

On July 21, Sumner commenced the present suit by suing the Board in district court, requesting a writ of certiorari to review the Board's decisions regarding the Building Setback Ordinance and Height Ordinance. *See* TEX. LOC. GOV'T CODE ANN. § 211.011(a), (c) (permitting judicial review of zoning board decision by petition for writ of certiorari). He also sought declarations that the

Khans' variance was invalid; that the Board's decision with respect to the Building Setback Ordinance did not apply to the Mechanical Setback Ordinance; that Flores and Rockenbaugh acted with favoritism to the Khans; that Flores and Rockenbaugh denied Sumner due process and failed to treat him impartially; and that the Khans' home violates the Height Ordinance. In his sixth amended petition, he added the City as a defendant, and in his tenth amended petition, he added Lusk, Rockenbaugh, and Flores. He continued to seek a writ of certiorari and various declarations, and also alleged that the City violated his substantive due process rights under the United States and Texas Constitutions and that the defendants violated federal law. *See* 42 U.S.C. § 1983 (2012).

At some point after the commencement of this suit, Flores asked the Khans to move an air conditioning unit closer to their house, which they apparently did. *Sumner v. Bd. of Adjustments*, No. H–12–2551, 2013 WL 1336604, at *3 (S.D. Tex. Mar. 29, 2013).[3] According to Sumner, however, the unit was moved back to a distance of four feet from the property line, to comply with a proposed amendment to the Mechanical Setback Ordinance, rather than the five feet required by the zoning ordinance then in effect. *Id.* The city later adopted the proposed amendment. SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES

---

[3]    Sumner's claim against these same parties has also been in the federal court system.

8

§ 05:02.013, *amended by* Spring Valley Village, Tex., Ordinance 2011-05 § 3 (Feb. 15, 2011).

Meanwhile, in February 2011, Sumner filed a motion for summary judgment on all claims in his then-live pleading, the fourth amended petition. He did not attach any evidence to his motion for summary judgment. Instead, he relied on unsupported and conclusory speculations, such as the assertion that the Khans' surveyor "almost surely [perpetrated] a deceit" rather than making an honest error, and employed a strategy of impugning the integrity, professionalism, and competence of the City Attorney, the City's litigation counsel, and other City officials. The trial court never expressly ruled on this motion.

After Sumner filed his tenth petition raising federal constitutional claims, the defendants removed the case to federal court and moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the grounds that Sumner had failed to state a claim upon which relief could be granted. *See* FED. R. CIV. P. 12(b)(6). The United States District Court for the Southern District of Texas, Judge Keith P. Ellison presiding, granted the motion, dismissing Sumner's federal due process and equal protection claims. *Sumner*, 2013 WL 1336604, at *8 (dismissing without prejudice and granting "one more chance" to amend pleadings). The federal court reasoned that Sumner had not demonstrated that he had any property interest protected under Texas law because "there is simply no protected property interest

in having a zoning ordinance enforced against one's neighbors." *Id.* at \*5 (citing *Horton v. City of Smithville*, 117 Fed. App'x 345, 347 (5th Cir. 2004)). Accordingly, the court dismissed Sumner's claims based on procedural due process, substantive due process, and equal protection under the federal Constitution. *Id.* at \*4–8. Sumner stipulated to dismissal of all of his federal claims with prejudice and requested remand of all state claims to Texas state court. *Sumner v. Bd. of Adjustments*, No. 4:12-cv-02551, Dkt. No. 49, at 1–2 (S.D. Tex. July 25, 2013). The federal court granted the stipulation, dismissed the federal claims with prejudice, and remanded the state-law claims. *Id.*, Dkt. No. 50 (S.D. Tex. July 26, 2013).

Upon remand to the trial court, the defendants moved for summary judgment, filed a plea to the jurisdiction, and moved for dismissal of all claims against the individual defendants. The trial court granted the defendants' motion for summary judgment, motion to dismiss, and plea to the jurisdiction. Sumner moved for a new trial, which the trial court denied. This appeal followed.

On appeal, Sumner raises five issues. First, he argues that insufficient evidence supported the Board's decision to grant the Khans a variance of the Building Setback Ordinance. Second, he argues that the Board abused its discretion in upholding Flores's decision to grant a Certificate of Occupancy and Compliance to the Khans. Third, he argues that he properly alleged a property interest, for

10

which reason he apparently—but not explicitly—contends that the trial court's decision was improper. Fourth, he alleges that he was denied a constitutional right to cross-examination of witnesses at a Board hearing. Fifth, he contends that the City violated his substantive due process rights by adopting various ordinances, namely (1) the 2011 amendment to the Height Ordinance; (2) the 1991 version of the Third Story Ordinance;[4] (3) a 1991 ordinance defining the term "residential story";[5] (4) a 1991 ordinance relating to attic access;[6] (5) the 1991 version of the Height Ordinance; and (6) the 1981 "Two Story Ordinance."[7] Finally, although he

---

[4]    SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 5B(2) (1991).

[5]    *Id.* § 03:S-06.

[6]    *Id.* § 05:02.02.02. This ordinance provides, "Any walk through access door or opening from a dwelling to an attic shall be of one-hour fire rated construction and shall have both a self closing device and a self latching device." SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 05:02.02.02. Sumner refers to this ordinance as the "New Two Story Ordinance." He cites ordinance by the same number each time that he mentions it. He refers to it only twice in his brief; both times without any explanation. From the record before us, Section 05:02.02.02 appears to have no relevance to any issue in this case, and Sumner fails to explain the relevance of any other ordinance relating to two-story construction. It may be that Sumner intended to refer to Ordinance 05:02.03.03, which provides, "No building or structure more than two stories shall be erected in Dwelling District 'A.'" *Id.* § 05:02.03.03. His briefing, however, provides no means of identifying the ordinance upon which he relies or its relevance to this case. To the extent his claims depend on Section 05:02.02.02 or any other "New Two Story Ordinance," Sumner has waived them due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

[7]    Sumner cites to this ordinance as "TWO STORY ORDINANCE 115 § 3.e, adopted 12/15/1981." We cannot identify any ordinance matching this description

11

does not identify these arguments as numbered issues, he argues that the final judgment did not dispose of all of his claims and that the trial court failed to rule on his motion for summary judgment.[8]

**Standards of Review**

"When a party challenges a zoning board's action by filing a writ of certiorari, the district court sits as a court of review to determine the sole question of the legality of the zoning board's order." *City of Alamo Heights v. Boyar*, 158 S.W.3d 545, 549 (Tex. App.—San Antonio 2005, no pet.) (citing TEX. LOC. GOV'T CODE ANN. § 211.011(a)); *see also City of San Angelo v. Boehme Bakery*, 190 S.W.2d 67, 70 (Tex. 1945). The trial court "may grant a writ of certiorari directed to the board to review the board's decision." TEX. LOC. GOV'T CODE ANN. § 211.011(c). Because of the use of the word "may," the trial court's decision to grant or deny the writ is discretionary. *Hagood v. City of Houston Zoning Bd. of Adjustment*, 982 S.W.2d 17, 18 (Tex. App.—Houston [1st Dist.] 1998, no pet.). "In such a proceeding, the Board's determination is presumed legal and the party challenging the decision has the burden of demonstrating its illegality by presenting a clear showing of an abuse of discretion." *Bd. of Adjustment of City of*

_____

in the record before us, and Sumner does not explain the relevance of this ordinance to any particular claim. We therefore hold that he has waived any arguments based on the "Two Story Ordinance" due to inadequate briefing. *See* TEX. R. APP. P. 38.1(i).

[8] Sumner's brief sets forth a statement of the issues but does not connect any particular argument to any particular issue.

12

*Dallas v. Billingsley Family Ltd. P'ship*, 442 S.W.3d 471, 474 (Tex. App.—Dallas 2013, no pet.); *Hagood*, 982 S.W.2d at 18; *Turcuit v. City of Galveston*, 658 S.W.2d 832, 834 (Tex. App.—Houston [1st Dist.] 1983, no writ). "A board abuses its discretion if it acts 'without reference to any guiding rules and principles' or 'clearly fails to analyze or apply the law correctly.'" *Boyar*, 158 S.W.3d at 549 (citation and internal alterations omitted) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) and *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Whether a board abused its discretion is a question of law that may be decided on summary judgment. *Bd. of Adjustment for City of San Antonio v. Kennedy*, 410 S.W.3d 31, 35 (Tex. App.—San Antonio 2013, pet. denied) (citing *Boyar*, 158 S.W.3d at 549). On appeal, this Court considers that question de novo. *Id.*

We review a trial court's order granting summary judgment de novo, taking as true all evidence favorable to the nonmovant and indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). "When both sides move for summary judgment, as they did here, and the trial court grants one motion and denies the other, reviewing courts consider both sides' summary-judgment evidence, determine all questions presented, and render the judgment the trial court

13

should have rendered." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010).

"Whether a court has subject matter jurisdiction is a question of law." *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "Whether a pleader has alleged facts that affirmatively demonstrate a trial court's subject matter jurisdiction is a question of law reviewed de novo." *Id.* "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Id.*

## Whether the Trial Court's Judgment Was Final

Sumner contends that the trial court's judgment was not final because it did not address all claims and all parties. This is a challenge to our jurisdiction over the appeal. "Texas appellate courts have jurisdiction only over final orders or judgments unless a statute permits an interlocutory appeal." *Ogletree v. Matthews*, 262 S.W.3d 316, 318–19 n.1 (Tex. 2007). "[I]n cases in which only one final and appealable judgment can be rendered, a judgment issued without a conventional trial is final for purposes of appeal if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties."

14

*Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). While Sumner does not designate his attack on the judgment's finality as one of his numbered issues, we consider it first because it implicates our jurisdiction over this appeal. *See In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 306 (Tex. 2010).

> Sumner's argument on this jurisdictional issue is as follows:

> Specifically, Appellant's 11th Amended Petition, filed on August 1, 2014, includes several amended and revised claims against Appellees which were not subject to Appellees' Motion for Summary Judgment and Motion to Dismiss[.] Appellees did not move for any relief as to these claims. Additionally, Appellant's 10th Amended Petition and the live pleading, the 11th Amended Petition, both contain many actions for declaratory relief against Appellees. As noted in Appellant's Response to Appellees' Motion for Summary Judgment and Appellees' Motion to Dismiss, Appellees failed to move for relief on all declaratory actions as well.

As a threshold matter, we note that the tenth amended petition was superseded by the eleventh amended petition and provides no basis for the trial court to grant any relief or deny the motion for summary judgment or plea to the jurisdiction. TEX. R. CIV. P. 62 ("an amendment . . . add[s] something to, or withdraw[s] something from, that which has been previously pleaded"); TEX. R. CIV. P. 65 (when pleading or other instrument is substituted for an earlier instrument, the earlier instrument "shall no longer be regarded as a part of the pleading in the record of the cause"); *J.M. Huber Corp. v. Santa Fe Energy Res.*, 871 S.W.2d 842, 844 (Tex. App.—Houston [14th Dist.] 1994, writ denied) ("An

15

amended petition also supersedes all prior petitions and operates to dismiss parties and causes of action to the extent they are omitted from the amended pleading.").

Sumner's argument is incorrect in that Spring Valley moved for dismissal or judgment on all of Sumner's claims. Their motion for summary judgment and plea to the jurisdiction expressly argued that "[t]he [trial] Court should affirm by summary judgment the [Board's] decision to grant the Khans' request for a variant to the [Building Setback Ordinance]" and "should dismiss for lack of subject matter jurisdiction the other claims asserted by Sumner against the City and its Officials." This is precisely the relief that the trial court granted. Moreover, the motion expressly argued that "judicial review of the [Board's] decision . . . under Chapter 211 of the Texas Local Government Code subsumes Sumner's declaratory judgment claims." Sumner did not address this argument in his opposition to the motion below nor in this appeal.

Sumner further argues, in a single paragraph, that the trial court failed to rule on his own motion for summary judgment and that ruling on the motion was a ministerial act. He contends, "Certain aspects of Appellant's Motion for Summary Judgment are implicitly overruled by the Final Judgment, but as set forth above, Appellees failed to move for relief on all claims, which were subject to Appellant's Motion for Summary Judgment." He does not explain which claims he believes were not covered by Spring Valley's motion for summary judgment. Nor does he

16

set forth any of the arguments from his own motion. He also does not explain how any of his claims were left unresolved by the trial court's order affirming the Board's decisions and dismissing with prejudice all of Sumner's claims against the other defendants. By failing to adequately brief this argument, Sumner has waived it. TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

On its face, Spring Valley's motion for summary judgment and plea to the jurisdiction addressed all claims and parties, and the trial court's judgment states that it is "a final order as to all parties and all claims." *Cf. Lehmann*, 39 S.W.3d at 192–93. We therefore overrule Sumner's arguments regarding the finality of the trial court's order and Sumner's motion for summary judgment and proceed to the merits of the appeal.

**Variance Decision**

In his first issue, Sumner argues that the Board's decision to grant a Building Setback Ordinance variance was supported by insufficient evidence because there was no evidence that a special condition existed on the Khans' property or that the variance was consistent with the public interest and the spirit of the ordinance. Spring Valley responds that Sumner failed to meet his burden in the trial court to show that the Board acted improperly.

17

A zoning board of adjustment may "hear and decide an appeal that alleges error in an order, requirement, decision, or determination made by an administrative official in the enforcement of this subchapter or an ordinance adopted under this subchapter." TEX. LOC. GOV'T CODE ANN. § 211.009(a)(1) (West 2012). It may also "authorize in specific cases a variance from the terms of a zoning ordinance if the variance is not contrary to the public interest and, due to special conditions, a literal enforcement of the ordinance would result in unnecessary hardship, and so that the spirit of the ordinance is observed and substantial justice is done." *Id.* § 211.009(a)(3).

As the party challenging the Board's actions, Sumner had the burden of proof to establish the illegality of the Board's order. *Billingsley Family Ltd. P'ship*, 442 S.W.3d at 474; *Hagood*, 982 S.W.2d at 18; *Turcuit*, 658 S.W.2d at 834. Whether a hardship exists is a question of fact to be determined by the Board. *Boyar*, 158 S.W.3d at 553; *Ferris v. City of Austin*, 150 S.W.3d 514, 521 (Tex. App.—Austin 2004, no pet.) (citing *Freeman v. Bd. of Adjustment*, 230 S.W.2d 387, 388 (Tex. Civ. App.—San Antonio 1950, no writ)). "On appeal, the issue is not whether there was hardship, but whether the trial court . . . could conclude as a matter of law that the Board had evidence of a substantive and probative nature [to] conclude that a literal enforcement would result in an unnecessary and unique hardship." *Ferris*, 150 S.W.3d at 521.

The Board heard testimony from Mr. Khanausakpkul that he relied on his professional contractors and surveyors in planning and building the addition to the Khans' home, that the incorrect setback was inadvertent and due to "a newly discovered peculiar existence of a one-fourth foot gap between [the Khans'] property and Mr. Sumner's property," that the structure was still 8.1 feet from Sumner's property line, and that a variance would not harm the public or surrounding properties. Mr. Khanausakpkul further testified that literal "enforcement of the 8 foot setback will cause us and our 2 month old baby to be in financial, physical, and emotional hardship, as the cost, effort, and time for modifying the structure to be in compliance with the setback provision, well, will be extreme." He continued, "[W]e [would] not be able to move into our new house when the lease of our current apartment expires at the end of [June 2010]." Testimony by the Khans' contractor, Waller, and surveyor, White, confirmed that the setback violation was inadvertent and remained undiscovered until construction of the Khans' addition was substantially complete. Based on this evidence, we hold that "the trial court, after examining all the evidence, could conclude as a matter of law that the Board had evidence of a substantive and probative nature before it upon which it could conclude that a literal enforcement would result in an unnecessary and unique hardship." *Ferris*, 150 S.W.3d at 521.

Sumner also argues that while Mr. Khanausakpkul "presented some testimony as to his potential financial hardship if the setback variance was not granted, but did not, *in any way*, present actual evidence demonstrating that special conditions existed on the property or that the variance is consistent with the public interest and the spirit of the ordinance." We disagree. Construction had been substantially completed on the addition by the time that Sumner first complained of a potential ordinance violation. The Board heard testimony that the Khans' home was still more than 8 feet from Sumner's property line. The setback violation was, according to multiple witnesses, a result of an error made repeatedly over many years by numerous professionals attempting to sort out conflicts between prior surveys and the physical markers in the ground. Based on these facts, we hold that the trial court could properly conclude that the Board heard evidence from which it could find a special condition on the Khans' property.

Sumner also contends that the Board lacked evidence that the variance would be consistent with the public interest or the spirit of the ordinance. But, as discussed above, the Board heard testimony about the inadvertence of the encroachment, its minimal extent, and the limited impact, if any, that it would have on the public. Sumner's argument is further undermined by express limitations in the variance itself. First, the variance is limited to the Khans' "existing house as constructed." "If the house is demolished or destroyed, then any future

20

construction shall comply with the City's setback lines. Any addition to or expansion of any structure on the property shall comply with the City's setback requirements." It also provided that no fence between the Khans' home and Sumner's home could be located more than seven feet from the Khans' home. Finally, it required the Khans to execute and deliver a quitclaim deed to Sumner "for all of Lot 274 and the Southeasterly 36.5 feet of Lot 273," thus resolving the question of who owned the strip of no-man's-land between the properties, at least to the extent that it was disputed by the Khans and Sumner. Given these restrictions and the limited nature of the six-inch encroachment by one part of the Khans' home, the trial court could properly have found that Sumner failed to demonstrate that the variance was inconsistent with either the public interest or the spirit of the City's ordinances.

Finally, we note that the Board's decision to grant a variance was consistent with variances granted or sustained in other cases. For example, in *Board of Adjustment, City of Corpus Christi v. McBride*, 676 S.W.2d 705 (Tex. App.—Corpus Christi 1984, no writ), the court of appeals affirmed a trial court decision that a board of variances should have granted a variance when the homeowners in question had obtained prior approval of their building plans and discovered a setback violation only after 75 to 80% of construction work had been completed, despite the fact that the construction was "in substantial compliance" with the

21

building plan. 676 S.W.2d at 706–07. Compliance as ordered by the board would have required "at least the partial removal of [a] covered patio," while "the trial court's order would permit it to remain as built." *Id.* at 707. "To make the modification required by the decision of the Board would [have] require[d] extensive structural and cosmetic changes." *Id.* at 708. The trial court therefore modified the board's order to grant a broader variance than that granted by the board, and the court of appeals affirmed. *Id.* at 706, 709.

Similarly, in *Town of South Padre Island, Texas v. Cantu*, 52 S.W.3d 287 (Tex. App.—Corpus Christi 2001, no pet.), homeowners submitted a survey showing a proposed home that would have "protruded approximately two feet over a building-setback line mandated by a Town zoning ordinance." 52 S.W.3d at 288–89. The violation, however, was unknown at the time, and the homeowners first learned of it "[w]hen the home was nearly eighty percent complete, [and] a building inspector informed" them of the violation. *Id.* After conducting another survey, the homeowners learned that the bedroom over their garage protruded twenty-two inches into the airspace over the setback line. *Id.* at 289. They requested a variance, which received a majority vote of the zoning board, but did not pass by the seventy-five percent majority required by statute. *Id.*; *see* TEX. LOC. GOV'T CODE ANN. § 211.009(c)(3). The trial court found that the board had abused its discretion by denying the variance due to the hardship that the homeowners

22

would suffer if the ordinance was enforced literally, and the court of appeals affirmed. 52 S.W.3d at 289, 291.

Sumner argues that these cases are distinguishable, relying instead on *City of Dallas v. Vanesko*, 189 S.W.3d 769 (Tex. 2006), in which the Supreme Court of Texas distinguished both *Cantu* and *McBride*. *Id.* at 772–73. In that case, Dallas had a zoning ordinance that significantly restricted its zoning board's ability to grant variances, beyond the limitations imposed by the Local Government Code. *Id.* Specifically, Dallas prohibited granting variances "to relieve a self created or personal hardship, nor for financial reasons only." *Id.* at 772. According to Sumner, the City similarly restricts the Board because its ordinances provide that the Board

> will grant Variances from the provisions of this Comprehensive Zoning Ordinance where such modifications of the height, yard, area width, lot depth, screening wall, coverage and parking regulations are necessary to secure an appropriate development of a parcel of land which differs from other parcels within the district by being of such restricted area, shape or slope that it cannot be appropriately developed without modification.

SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § A1:02.04 (2008). Sumner's argument misconstrues this ordinance. Unlike the ordinance in *Vanesko*, which prohibited a board from granting variances in certain circumstances, Section A1:02.04 merely provides that the Board *will* grant variances in certain circumstances and under certain limitations. *Id.* It does not

purport to prohibit the Board from granting variances under other circumstances as permitted by the Local Government Code.

We hold that the trial court could have determined that sufficient evidence supported the Board's decision to grant a variance of the Building Setback Ordinance to the Khans. Accordingly, we overrule Sumner's first issue.

## Certificate of Occupancy and Compliance

In his second issue, Sumner argues that "the Board abused its discretion in upholding [Flores's] decision to issue a Certificate of Occupancy and Compliance when there was no determination whether the [Khans' addition] complied with the height, building setback, and mechanical setback" ordinances.[9] Spring Valley responds that neither the trial court nor this Court has jurisdiction over any such claim because Sumner did not challenge the issuance of the Certificate of Occupancy and Compliance in front of the Board. Indeed, he expressly disavowed any such challenge, testifying at the September 30, 2010, Board hearing that he was not asking the Board to revoke the Khans' permit. Instead, he asked the Board "to rule on whether or not the City made a proper judgment as to how the height [of the Khans' home] is computed." He reiterated,

> I want you to make a ruling that Mr. Flores's interpretation is incorrect and that my interpretation is correct. Or said another way, I want you to make a ruling that the building height exceeds the legal limit. What to do about that is not the subject of this hearing.

---

[9] In his argument, however, he addresses only the Height Ordinance.

24

According to Spring Valley, Sumner thus failed to exhaust his administrative remedies with respect to the permit before initiating this suit. We agree.

The trial court had power to review only a "decision" by the Board "that is appealed" to the trial court. TEX. LOC. GOV'T CODE ANN. § 211.011(a), (c), (f). But the Board made no decision regarding the propriety of Flores's issuance of a Certificate of Occupancy and Compliance. Indeed, Sumner expressly disavowed any challenge to Flores's issuance of the certificate during the Board's hearing on the Height Ordinance. His live pleading makes no mention of any alleged Board action or failure to act with respect to the certificate.

Because the Board made no "decision" regarding whether Flores properly issued the certificate, that question was not properly before the trial court, and we do not have jurisdiction over it on appeal. *See id.*; *see also* TEX. R. APP. P. 33.1(a)(1) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court . . . ."). We overrule Sumner's second issue.

**Whether Sumner has a Property Interest**

In his third issue, Sumner argues that he has a property interest in the enforcement of the Height Ordinance "if there is reason to believe that failure to comply would result in a violation of his constitutionally protected interest in the one story deed restriction." Spring Valley responds that Sumner has not established

any property interest implicated by this suit and that, even if he had such an interest, Texas courts do not recognize a private cause of action for violations of Article 1, Section 19 of the Texas Constitution.

Sumner contends that "a constitutional claim can arise when private property rights are taken for the benefit of another private party." In support of this statement, he relies entirely on *Bennett v. Planning Comm'n, City of Bryant*, No. 4:09-CV-00315, 2010 WL 1417971 (E.D. Ark. Mar. 31, 2010). In that case, a zoning board permitted property to be replatted so as to eliminate a "bill of assurance," effectively a deed restriction, prohibiting subdivision of the property or use for non-residential purposes. *Id.* at *1. Sumner argues, "According to *Bennett*, Appellant has a constitutionally protected interest in the compliance of the Khan's property with the height ordinance if there is reason to believe that failure to comply would result in a violation of his constitutionally protected interest in the one story restriction in his *deed restrictions*." (emphasis original). This argument is inapposite.

The federal district court in *Bennett* concluded that the plaintiffs had raised a federal takings claim, actionable under 42 U.S.C. § 1983, because the board in that case actually eliminated a substantive right, namely the bill of assurance. *Id.* at *5–7, *9. By contrast, the Board here has not done anything whatsoever to any deed restrictions applicable to Sumner's property or the Khans' property, and its

26

decision to grant a variance of the Building Setback Ordinance in no way impairs any party's rights under any deed restrictions, which may be more or less expansive than the City's ordinances or the variance. Further, neither the Local Government Code nor the City's ordinances give the Board any power to enforce deed restrictions, as opposed to zoning ordinances. As Lusk, writing for the Board, explained in a letter to Sumner, "The Board of Adjustment, an administrative body authorized to act by State law and the City's Zoning Ordinance, can only hear zoning matters." As a federal court case applying federal and Arkansas law to an administrative decision totally unlike the Board's actions here, *Bennett* has no precedential value for this case, which involves questions of Texas law.

Sumner's arguments regarding deed restrictions notwithstanding, this case involves only claims regarding the enforcement, lack of enforcement, or variance of the City's ordinances. As Judge Ellison explained during this litigation's sojourn into the federal district court, "[t]here is simply no protected property interest in having a zoning ordinance enforced against one's neighbors." *Sumner*, 2013 WL 1336604, at *5 (citing *Horton*, 117 Fed. App'x at 347). Judge Ellison elaborated,

> Furthermore, Texas case law makes clear that an individual has no protected property interest in the continued use of his property for a particular purpose just because such use has commenced or an initial zoning classification has been made. *City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972), *abrogated on other grounds by Bd. of Adjustment of City of San Antonio v. Wende*, 92 S.W.3d 424 (Tex. 2002); *City of La Marque v. Braskey*, 216 S.W.3d 861, 863 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  Accordingly, the mere

27

> fact that Plaintiff has grown accustomed to a certain degree of privacy and a particular neighborhood character does not grant him a protected property interest in these qualities.

*Id.* We agree with Judge Ellison's exposition of Texas law.[10] *See, e.g.*, *Benners*, 485 S.W.2d at 778; *Braskey*, 216 S.W.3d at 863; *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 483 (Tex. App.—Austin 2004, pet. denied).

Because Sumner had no property interest in the enforcement of the City's ordinances against the Khans, we overrule Sumner's third issue.

### Constitutional Right to Cross-Examination

Sumner's fourth issue addresses whether he had a constitutional right to cross-examination of witnesses in the Board's hearings. According to Sumner, due process required that he be permitted to cross-examine witnesses, and the Board violated Article 1, Section 19 of the Texas Constitution by making its decisions without permitting him to do so. Thus, the trial court erred in affirming the Board's decisions. Spring Valley responds that Sumner had no such right because he was not a party to the hearing regarding the Building Setback Ordinance variance, he did not tender questions to be asked by the presiding officer at either hearing, and he failed to request permission to cross-examine witnesses at either hearing.

---

[10] Spring Valley has not pleaded or argued on appeal that Sumner's claims are barred by the doctrines of "law of the case" or res judicata by virtue of Judge Ellison's decision. For these reasons, we need not and do not consider whether any of Sumner's claims are barred by the law of the case or by the doctrine of res judicata. Nevertheless, our holding is consistent with Judge Ellison's resolution of the legal questions implicated by Sumner's federal claims.

In administrative hearings, due process requires that parties be accorded a full and fair hearing, including the right to cross-examine adverse witnesses and to present and rebut evidence on disputed fact issues. *Richardson v. City of Pasadena*, 513 S.W.2d 1, 3–4 (Tex. 1974); *see also City of Corpus Christi v. Pub. Util. Comm'n of Tex.*, 51 S.W.3d 231, 262 & nn. 150–51 (Tex. 2001) (Owen, J., concurring, joined by seven other members of the Court) (citing *Richardson*, 513 S.W.2d at 3). But "[d]ue process does not require that every administrative proceeding contain the full procedural framework of a civil trial." *Bexar Cnty. Sheriff's Civil Serv. Comm'n v. Davis*, 802 S.W.2d 659, 664 (Tex. 1990); *City of Corpus Christi*, 51 S.W.3d at 262 & n.152 (Owen, J., concurring). Rather, in the zoning ordinance context, the Local Government Code requires zoning boards to adopt rules of procedure for their meetings. TEX. LOC. GOV'T CODE ANN. § 211.008(e) (West 2012).

Section 01:03.02 specifically reference these rules. SPRING VALLEY VILLAGE, TEX., PLANNING & ZONING ORDINANCES § 01:03.02. The rules of procedure adopted by the Board provide that the applicant for relief from the Board is automatically a party to any hearing. The rules also provide that others may obtain party status:

> Other persons may request party status by filing a written motion and demonstrating that (1) they oppose the action requested by the applicant and (2) the outcome of the hearing would affect them in a way that is markedly different from the way it would affect the public.

29

Admission of additional parties is discretionary, and it requires the affirmative vote of at least three members. Party status is not necessary to present comments, opinions or evidence to the Board.

The rules also provide that anyone "may submit questions to be asked by the presiding officer, at the presiding officer's discretion." "If requested by written motion and supported by a showing of good cause and true need, the Board may allow direct cross-questioning by a party or the Building Official." "The Board may impose reasonable limitations on cross-questioning, if granted."

It is undisputed that Sumner was not a party to the hearing on the Khans' application for a variance to the Building Setback Ordinance, did not submit questions to be asked by the presiding officer at either hearing, and did not request by written motion permission to cross-examine witnesses at either hearing. Sumner argues that we should disregard these facts because the Board "applied previously undisclosed and arbitrary procedures" in following its own rules of procedure, and "whether [Sumner] had notice of the Board's rules (which he denies he did) is a genuine issue of material fact that should have precluded summary judgment." But "all persons are presumed to know the law." *E.g.*, *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 n.3 (Tex. 1990). Sumner has not identified any evidence in the record that he did not know of the existence of the relevant rules of procedure, much less that the Board somehow kept them a secret.

Further, Sumner testified at his deposition that he did not request cross-examination of any witnesses:

> Q. You never expressed to anyone your desire to cross-examine any of the other witnesses at the hearing, did you?
>
> A. I expressed the desire to speak. I did not explicitly call it a cross-examination.

He clarified that he "expressed the desire to speak" by "raising [his] hand and asking to be heard," by "walk[ing] in the front door," and "by rolling [his] eyes back in [his] head and looking at the ceiling and acting like this is a joke." He admitted, however, that he never used the word "cross-examination" and never told any member of the Board that he wanted to ask a question of a witness except by his body language.

Because Sumner did not request the opportunity to cross-examine any witness, either by formal compliance with the Board's duly adopted rules of procedure or by an informal request at a hearing or at any other time, and because he was never expressly denied that right, he has failed to raise any genuine issue as to any material fact regarding his complaint that he was denied the right to cross-examine witnesses. We therefore hold that the trial court did not err in granting summary judgment affirming the Board's actions.

**Constitutional Challenges to Adoption of City Ordinances**

In his fifth and final issue, Sumner argues that the City violated his substantive due process rights by adopting (1) the 2011 amendment to the Height Ordinance, (2) the Third Story Ordinance, (3) an ordinance defining the term "residential story," (4) the so-called "New Two Story Ordinance," (5) the Height Ordinance, and (6) the so-called "Two Story Ordinance." Spring Valley responds that the restrictions in question were reasonable and that Sumner failed to show a clear abuse of municipal discretion or conclusive evidence that the zoning ordinances were arbitrary.

As we have already discussed and as explained by Judge Ellison, Sumner has no right to have his property classified a certain way under a zoning ordinance, to have zoning ordinances permit particular uses of his property, or to the continuation or enforcement of any particular zoning ordinance or classification thereunder. *Sumner*, 2013 WL 1336604, at *5 (citing *Horton*, 117 Fed. App'x at 347); *see, e.g.*, *Benners*, 485 S.W.2d at 778; *Braskey*, 216 S.W.3d at 863; *Weatherford v. City of San Marcos*, 157 S.W.3d 473, 483 (Tex. App.—Austin 2004, pet. denied). Sumner argues, however, that any amendment to a zoning ordinance nonetheless must be justified by such great changes in the character and use of the affected district or surrounding area such that the public's health, morals,

32

safety, or welfare demands the amendment or because the amendment was part of an orderly plan for development.

It is settled law that a city may rezone or amend its ordinances "as long as the action is not arbitrary, capricious and unreasonable." *City of Pharr v. Tippitt*, 616 S.W.2d 173, 177 (Tex. 1981); *see Benners*, 485 S.W.2d at 778. A city's zoning ordinance "is presumed to be valid and the burden is on the one seeking to prevent its enforcement, whether generally or as to particular property, to prove that the ordinance is arbitrary or unreasonable in that it bears no substantial relationship to the health, safety, morals or general welfare of the community." *City of Pharr*, 616 S.W.2d at 176. "The party attacking the ordinance bears an extraordinary burden to show that no conclusive or even controversial or issuable fact or condition existed which would authorize the municipality's passage of the ordinance." *City of Brookside Vill. v. Comeau*, 633 S.W.2d 790, 792–93 (Tex. 1982) (internal quotation marks omitted); *Baccus v. City of Dallas*, 454 S.W.2d 391, 392 (Tex. 1970); *Baird v. City of Melissa*, 170 S.W.3d 921, 928 (Tex. App.—Dallas 2005, pet. denied); *City of San Antonio v. Arden Encino Partners, Ltd.*, 103 S.W.3d 627, 631 (Tex. App.—San Antonio 2003, no pet.). Thus, "[t]he burden on the party attacking the municipal legislative action is a heavy one." *City of Pharr*, 616 S.W.2d at 176.

Sumner makes two arguments in support of his contention that the City violated his substantive due process rights in adopting the challenged ordinances. First, he attacks all six ordinances on the grounds that no changed conditions or orderly plan for development existed at the times when the ordinances were adopted. As support, he relies on his own affidavit, in which he states that he "could not find support for the general claim" that encouraging development of two-story homes would increase property values. He also testified, however, that "[l]ocal realtors have long promoted the idea that lifting the two story restriction will increase property value by causing redevelopment" but that he found "very little" to support that claim. Sumner's own affidavit thus establishes that there was a controversy regarding the potential impact of two-story homes on property values. Assuming that the City was motivated to adopt the ordinances by a desire to "enhance property values," such a motivation can constitute a rational basis for the City's action. *E.g.*, *City of New Orleans v. Dukes*, 427 U.S. 297, 304–05, 96 S. Ct. 2513, 2517 (1976); *Sumner*, 2013 WL 1336604, at \*6 (citing *Yur-Mar, L.L.C. v. Jefferson Parish Council*, 451 Fed. App'x 397, 401 (5th Cir. 2011)).

Taking Sumner's testimony as true, we hold that it does not show that "no conclusive or even controversial or issuable fact or condition existed" supporting the adoption of the challenged ordinances. *Comeau*, 633 S.W.2d at 792–93;

*Baccus*, 454 S.W.2d at 392; *Baird*, 170 S.W.3d at 928; *Arden Encino Partners*, 103 S.W.3d at 631.

Second, Sumner argues that the 2011 ordinance amending Section 03:H-01 "is different, and less restrictive than what the Planning and Zoning Commission ('P&Z') reviewed and recommended to City Council." According to Sumner, Texas case law requires that the adopted ordinance be the same as the proposal considered by a zoning commission or less restrictive than the pre-amendment version of the ordinance.

We cannot and do not reach the merits of this argument, however, as Sumner does not identify any evidence of what language the Planning and Zoning Commission considered. Instead, he points only to legal conclusions in his tenth— now superseded—amended petition, in which he states that the adopted amendment differs substantively from the proposed amendment, again without providing either version of the language or adducing any evidence. By failing to identify the language at issue or any support for this argument, Sumner has waived it. *See* TEX. R. APP. P. 38.1(i).

We hold that Sumner did not present any facts sufficient to meet his burden in challenging the City's ordinances as violating his substantive due process rights. And as we have previously noted,[11] because Sumner's identifications of the "New

---

[11] *See* nn. 6–7, *supra*.

Two Story Ordinance" and "Two Story Ordinance" are incomplete to the point that we cannot determine which ordinances he challenges and because he does not discuss or analyze either of these ordinances, he has waived any challenge to those two ordinances.

We hold that Sumner has not demonstrated that the trial court erred by granting Spring Valley's motion for summary judgment and plea to the jurisdiction, and we overrule Sumner's fifth issue.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Justices Jennings, Higley, and Brown.

36